Clifford P. HANSON, Plaintiff and Appellant,

v.

John ZOLLER and Martha Zoller, husband and wife et al., Defendants, and James P. Zoller and Alice R. Zoller, husband and wife et al., Defendants and Respondents.

James P. ZOLLER and Alice R. Zoller, Third-Party Plaintiffs, and Gate City Savings and Loan Association, a corporation, Third-Party Plaintiff and Appellant,

v.

NORTH DAKOTA GUARANTY & TITLE CO., Third-Party Defendant and Respondent.

Eugene V. BINDER and Gloria A. Binder, husband and wife; and The Dakota National Bank of Bismarck, a corporation, Third-Party Plaintiffs and Appellants,

v.

NORTH DAKOTA GUARANTY & TITLE CO., Third-Party Defendant and Respondent.

Civ. No. 8511.

Supreme Court of North Dakota.

April 20, 1971.

Rehearing Denied June 7, 1971.

See also N.D., 174 N.W.2d 354.

Vogel, Bair & Graff, Mandan, for plaintiff and appellant.

Conmy, Conmy, Rosenberg & Lucas, Bismarck, for Gate City Savings and Loan Association, a corporation, third-party plaintiff and appellant, and for James P. Zoller and Alice R. Zoller, third-party plaintiffs.

Frederick E. Saefke, Jr., Bismarck, for Eugene V. Binder and Gloria A. Binder, husband and wife, and The Dakota National Bank of Bismarck, a corporation, third-party plaintiffs and appellants.

Thompson, Lundberg & Nodland, Bismarck, for Paul M. Breene, defendant and respondent.

H. G. Ruemmele, Special Asst. Atty. Gen., Grand Forks, for State of North Dakota, defendant and respondent.

Zuger, Bucklin, Kelsch & Zuger, Bismarck, for North Dakota Guaranty & Title Co., third-party defendant and respondent.

ADAM GEFREH, District Judge.

In this action the plaintiff seeks to foreclose a certain mortgage given by John Zoller and Martha Zoller, husband and wife, pertaining to the South Half of the Northeast Quarter (S½ NE¼) of Section Twenty-six (26), Township One Hundred Thirty-nine (139), Range Eighty (80), Burleigh County, North Dakota, and other land not involved in this action.

In addition to John Zoller and Martha Zoller, other subsequent purchasers, encumbrancers and lienholders were made defendants to the foreclosure action.

The defendants, James P. Zoller and Alice R. Zoller, husband and wife; Eugene V. Binder and Gloria A. Binder, husband and wife; Paul M. Breene and the State of North Dakota, are purchasers subsequent to the mortgage in question, and The Dakota National Bank of Bismarck, and Gate City Savings and Loan Association, are holders of mortgages subsequent to the plaintiff's mortgage. Defendants James P. and Alice R. Zoller, and Gate City Savings and Loan Association; Eugene V. and Gloria A. Binder and The Dakota National Bank of Bismarck, as third-party plaintiffs in separate actions impleaded The North Dakota Guaranty and Title Company as third-party defendant.

In the District Court, judgment was granted in favor of the plaintiff as against John and Martha Zoller, the Credit Bureau, Inc., of Bismarck, Max D. Rosenberg, trustee of State Acceptance Corporation, a bankrupt, and Atlas, Inc., who did not answer the complaint and were in default, and in favor of all the named defendants and against the plaintiff. Since judgment was granted in favor of defendants and third-party plaintiffs in the foreclosure action, the third-party complaint against The North Dakota Guaranty and Title Company was dismissed. After the plaintiff, Clifford P. Hanson, had filed his notice of appeal the defendants and third-party plaintiffs filed appeals from the orders dismissing their third-party complaints against the third-party defendant. All the parties demanded a Trial De Novo in the Supreme Court.

The mortgage being foreclosed is dated May 16, 1962, and was filed for record in the office of the Register of Deeds of Burleigh County, North Dakota, on March 6, 1963, at 10:30 A.M., and was subsequently recorded in Book 358 of Mortgages on Page 108.

The record shows that in July of 1964, John Zoller and Martha Zoller, the mortgagors, caused part of the land described in the mortgage to be subdivided into Tracts A, B, and C, and other parcels which subdivision plat was filed on November 5, 1964, in Plat File Z with the Register of Deeds. Subsequent to the date and recording of plaintiff's mortgage, James P. and Alice R. Zoller acquired title to Tract A, Eugene V. and Gloria Binder acquired title to Tract B, and Paul M. Breene acquired title to Tract C and also other lands, all by warranty deeds from John and Martha Zoller. Thereafter, James P. and Alice R. Zoller mortgaged their tract to Gate City Savings and Loan Association, and Eugene V. and Gloria A. Binder mortgaged their tract to The Dakota National Bank of Bismarck, which mortgages were filed for record subsequent to the recording of the plaintiff's mortgage.

Additionally, the State of North Dakota acquired by condemnation part of the property in the South Half of the Northeast Quarter (S½ NE¼) of Section Twenty-six (26), described in the plaintiff's mortgage subsequent to the recording of plaintiff's mortgage.

The record further shows that abstracts of title were obtained from the North Dakota Guaranty and Title Company for Tracts A, B, and C, and the State of North Dakota had obtained a Title Certificate from a title insurance company. The abstracts of title pertaining to Tracts A, B, and C, did not show the mortgage from John and Martha Zoller to the plaintiff. The Title Insurance Certificate to the State of North Dakota also did not make reference to the plaintiff's mortgage. It is undisputed that all of the defendants named had no actual knowledge of the existence of plaintiff's mortgage from John and Martha Zoller.

At the trial of the action, James Horner and Mildred Benesh, employees of the North Dakota Guaranty and Title Company, the firm that prepared the abstracts

to Tracts A, B, and C, testified that the abstracts they prepared were prepared from the information derived from the tract index pertaining to the land in question and at the time the abstracts were prepared plaintiff's mortgage was not indexed under the South Half of the Northeast Quarter (S½ NE¼) of Section Twenty-six (26), Township One Hundred Thirty-nine (139), Range Eighty (80). James Horner, further testified that sometime during September of 1966, he found the plaintiff's mortgage indexed in the tract index against either the northwest or southwest quarter of the northwest quarter. Mildred Benesh, also testified that on March 29, 1967, when she prepared the abstract of title for plaintiff pertaining to land embraced in his mortgage, the tract index showed the mortgage indexed against the South Half of the Northeast Quarter of Section 26, but subsequent to March 29, 1967, when she had an occasion to check the grantor-grantee and grantee-grantor indexes they still showed the property indexed as part of the Northwest Quarter. During the course of the trial all of the records from the register of deeds office, the reception book, tract index, grantor and grantee indexes and Page 108 of Book 358 of Mortgages were introduced as evidence.

The District Court, upon conclusion of the trial, found that the Hanson mortgage was originally indexed insofar as the property in question was concerned as part of the Northwest Quarter of Section 26, rather than the Northeast Quarter; that alterations in the records in the register of deeds office were made subsequent to the recording of the conveyances to the defendants, and held that the recording of the plaintiff's mortgage in the manner it was recorded did not comply with our recording statute and therefore it did not constitute constructive notice to third persons, and that the defendants were purchasers or encumbrancers for value without any notice, actual or constructive.

An examination of Page 108 of Book 358 of Mortgages, being Defendant's Exhibit "V—1," shows that when the mortgage was copied the portion pertaining to the description in question read: "The South one-half of the North one-quarter of Section 26, Township 139, Range 80, County of Burleigh, State of North Dakota." A correction with different type was made by inserting the word "east" below the word "one" in the phrase "North one-quarter." In the original instrument which was introduced in evidence, a similar correction appears, but the correction is made in ink and the word "east" is above the "one" in the "North one-quarter" phrase.

Defendant's Exhibit "U", being a photocopy of the reception book page on which the mortgage instrument was entered shows under the description of the property other descriptions and "Part of Sec. 26–139–80." Preceding the quoted description appeared an abbreviated description that has been crossed out and is not legible.

Defendant's Exhibits "R—1" "R—2", the original pages from the Grantor Index to Mortgages, shows the entry with a description in reference to the description of the property in question as appearing to read "S½ N¼–26–139–80" with the first part being not very legible.

Defendant's Exhibits "S—1" and "S—2", are pages from the Grantee Book to Mortgages which contain the entry in question. Again the description is difficult to make out and the only part of the description that is legible is "S½ 26–139–80". The writing after S½ has been written over and apparently is intended to read "S½ NE¼", but unless one knows that this is what is meant he would not be able to read it easily as such.

Defendant's Exhibit "T", is the page taken from the Tract Index which contains the entry in question. The instrument in question appears indexed under the SW and SE quarter of the NE¼, but there also appear erasures in the SW and SE quarters of the NW¼ of Section 26.

These records clearly show that alterations in the records were made at some

time, and that some of the altered descriptions are not legible now.

We have examined all of the exhibits relevant to the issues and have reviewed the transcript of the testimony adduced at the trial and agree with the findings of the trial court, that the original records in the office of the register of deeds incorrectly described the property in question, in the reception book, tract index, grantor and grantee indexes, and that certain corrections and alterations were subsequently made, and that these corrections and alterations were made subsequent to the conveyances of the defendants in this action.

The trial court concluded that proper indexing is an essential part of the recording process and unless the indexes correctly reflect the existence and contents of an instrument, the instrument will not impart constructive notice to subsequent purchasers and encumbrancers.

The issues presented in this appeal as they relate to the action between the plaintiff and defendants are:

(1) Does an instrument that is erroneously indexed under the wrong description in the tract index constitute constructive notice of its execution and contents to subsequent purchasers and encumbrancers?

(2) Does a prospective purchaser or encumbrancer ordinarily have a duty to consult the reception book, grantor and grantee indexes, that if consulted would contain sufficient information to put a prudent person upon inquiry?

(3) If both questions are answered in the negative, should the consequence of the failure of the register of deeds to correctly index the mortgage in the tract index fall upon the plaintiff or the defendant?

The plaintiff argues that his mortgage was deposited with the register of deeds for recording and that the mortgage was subsequently accurately copied in the book of mortgages, and therefore pursuant to Sections 47–19–45, 47–19–08 and 47–19–19 of the N.D.C.C. this constituted constructive notice to subsequent purchasers and encumbrancers.

The sections referred to read as follows:

The depositing with the proper officer for record of any instrument shall be constructive notice of the execution of such instrument to all purchasers and encumbrances subsequent to such depositing, if such instrument is subsequently recorded. All instruments entitled to record, the record of all instruments, or a duly certified copy of such record, shall be admissible in evidence in all the courts of this state and may be read in evidence in all of the courts of this state without further proof.

Sec. 47–19–45, N.D.C.C.

An instrument is deemed to be recorded when, whether entitled to record or not, it is deposited with the proper officer for record, if such instrument is subsequently recorded.

Sec. 47–19–08, N.D.C.C.

The record of any instrument shall be notice of the contents of the instrument, as it appears of record, as to all persons.

Sec. 47–19–19, N.D.C.C.

The plaintiff further contends that an instrument is recorded within the meaning of these sections quoted when it is transcribed in the proper book in the register of deeds' office.

The defendants argue that an instrument cannot be deemed recorded so as to constitute constructive notice to third persons until all the steps required by the statutes pertaining to the register of deeds have been completed, and that would include correct indexing in the tract index book.

The following sections pertain to the duties of the register of deeds:

The register of deeds shall:

1. Keep a full and true record, .in proper books provided for that purpose, of each patent, deed, mortgage, bill of sale, security agreement, judgment, decree, lien, certificate of sale, and other instrument required to be filed or admitted to record, if the person offering such instrument for filing or recording shall first pay to him the fees provided by law for such filing or recording;

2. Endorse upon each instrument filed with him for record or otherwise the date and the hour and minute of the day of such filing;

3. Endorse upon each instrument, when the same is recorded, in addition to the data specified in subsection 2 of this section, the number or letter designating the book of records in which the record of the instrument is made and the page upon which it is recorded;

4. When the instrument is recorded, endorse thereon, in a note at the foot of the recorded instrument, the date and the hour and minute of the date when it was filed with him and the book of records in which the record thereof is made and the page upon which it is recorded; * * *
Sec. 11–18–01, N.D.C.C.

The register of deeds shall keep a separate tract index of the deeds, contracts, and other instruments which are not merely liens and a separate tract index of the mortgages and other liens affecting or relating to the title to real property. Such indexes shall be in substantially the following forms: * * (Forms omitted)

Sec. 11–18–07, N.D.C.C.

The register of deeds shall keep separate grantor and grantee indexes of the deeds, contracts, and other instruments not merely liens and separate grantor and grantee indexes of the mortgages and other instruments which are liens affecting or relating to the title to real property. Such indexes shall show:

1. The names of the grantors and of the grantees;

2. The dates of the several instruments filed for record;

3. The dates upon which the several instruments are filed; and

4. The descriptions of real property affected by such instruments.

Sec. 11–18–08, N.D.C.C.

The register of deeds, when any deed, patent, mortgage, receiver's receipt, contract, notice of lis pendens, copy of decree, or other instrument affecting the title to, or creating a lien upon, any real estate within his county is filed in his office, shall write or stamp thereon immediately a document number. Document numbers shall commence with the number one in each county and shall follow consecutively in the order of filing of the various documents. Priority of the document number on an instrument shall be prima facie evidence of the priority of the filing thereof. When the register of deeds receives by mail or other like enclosure more than one instrument at a time he shall affix document numbers thereon in the order in which such instruments actually come to his hand on opening such enclosure save that when more than one instrument is recorded from the same source at the same time, he may follow such directions, if any, as the sender may give in such numbering.

Sec. 11–18–09, N.D.C.C.

The register of deeds shall keep a book known as "The Reception Book."

Such book shall be ruled in parallel columns showing:

1. In the first column at the left side of the page, the document number;

2. In the second column, the date of filing;

3. In the third column, the name of the grantor;

4. In the fourth column, the name of the grantee;

5. In the fifth column, the character of the instrument;

6. In the sixth column, the book in which and page upon which the instrument is recorded;

7. In the seventh column, the name of the person to whom the instrument was delivered; and

8. In the eighth column, a brief description of the property, if any, described in the instrument.

Immediately after any document or paper of a kind mentioned in section 11-18-09 is numbered, it shall be entered in the reception book. The reception book shall be part of the public records of the office and open to public inspection during office hours.

Sec. 11-18-10, N.D.C.C.

When an instrument affecting the title to or creating a lien upon real estate within the county is numbered and entered in the reception book and indexed, it shall be recorded or filed as provided by law. The register of deeds shall write or stamp, or cause to be written or stamped, at the beginning of a recorded instrument the words "document number" and shall add thereto the number stamped or written on the document. He shall add, immediately after the record of such instrument, a certificate reciting that the instrument was filed in his office and giving the date and hour of filing. He shall authenti-cate the certificate with his official signature, but he need not affix his official seal thereto.

Sec. 11-18-11, N.D.C.C.

The affixing of the signature of the register of deeds to a recorded instrument shall complete the record thereof. Any person who thereafter willfully erases, adds to, interlines, mutilates, conceals, destroys, or in any manner changes the record is guilty of a felony and shall be punished by imprisonment in the penitentiary for not less than one year nor more than five years, and, if an officer, in addition thereto, shall forfeit his office.

Sec. 11-18-12, N.D.C.C.

■ The defendants, accordingly argue that an instrument deposited with the register of deeds does not impart constructive notice to subsequent purchasers and encumbrancers until all of the steps required by the register of deeds in recording instruments have been complied with. We do not believe that all of the sections pertaining to the duties of the register of deeds in recording instruments have to be complied with in order for an instrument to impart constructive notice to subsequent purchasers and encumbrancers. We believe only those sections or steps that pertain to the aspect of notice must be substantially complied with.

The fundamental purpose of the recording statutes is to protect potential purchasers of real property against the risk that they may be paying out good money to someone who does not actually own the property that he is purporting to sell. The recording acts operate by making the history of the title involved in a real estate transaction readily available to a prospective purchaser, and by providing that the history so disclosed by the record is binding upon a prospective purchaser whether he consults the record or not.

At the time North Dakota adopted its recording acts, many states were still

utilizing only grantor-grantee indexes as the chief aids in title search. This is a cumbersome way of digging out the history of the title to a given tract of land.

Our recording acts date back to the territorial code of 1877, which in turn were adopted from the California Civil Code of 1875. Several of the midwestern and western states adopted similar statutes patterned after the California statutes.

The territorial code of 1877 provided for a more modern recording procedure and provided for a numerical tract index in lieu of the grantor-grantee index.

Chapter 21, Counties and County Officers, Sec. 58, Rev.Code Dakota 1877, reads as follows:

The registers of deeds shall prepare from the records of their offices respectively, and shall hereafter keep a numerical index of the deeds, mortgages, and other instruments of record in their respective offices affecting or relating to the title to real property, in lieu of the indexes by names of grantors and grantees, as now kept.

Apparently it was the intention of the Territorial Legislature to only require the register of deeds to keep a tract index. However, for whatever the reason may have been, the provision for also requiring grantor-grantee indexes was added in 1887, and both provisions became a part of our law from the time of statehood. Since the original adoption of these recording acts by the several states, all have undergone some changes in order to make them more applicable to the specific needs of each state.

Although this court over the years has had to interpret several sections of our recordings laws, the precise question that is now before us as to what constitutes sufficient compliance with the recording statutes so as to give constructive notice has never been decided.

We believe, however, that some of our prior decisions are relevant to the issue before us and do provide a direction in what we believe to be the correct interpretation of our recording statutes.

■ This court in Northwestern Improvement Company v. Norris, 74 N.W.2d 497, answered the argument that the mere depositing of an instrument with the register of deeds for recording would thereafter constitute notice to subsequent purchasers, by holding that Section 47–19–08 and Section 47–19–45, quoted earlier, must be construed together, and stated:

Their proper construction is that an instrument gives only temporary constructive notice of its contents when deposited in the office of the register of deeds and that when the instrument is recorded the record for purposes of constructive notice relates back to the date of deposit and as of that time is constructive notice of the contents actually and correctly recorded.

The same principle was reaffirmed in Northern Pacific Railway Co. v. Advance Realty, 78 N.W.2d 705.

There can no longer be any doubt that in order for an instrument to impart constructive notice to the public it must actually be recorded in the books required to be kept by the register of deeds. Must an instrument be also indexed?

■ The existence of a tract index, which not only makes all instruments equally accessible to reasonable search, but which has its primary focus upon tracts of land rather than upon grantors and grantees, makes the concept of "chain of title" as developed in relation to the old grantor and grantee type index inapplicable. The fact that in our state we have developed a recording system by counties, and which consequently results in many thousands of instruments being recorded annually in some counties, makes it totally impractical for anyone to make a title search by means of grantor-grantee indexes.

In our state, today, the tract index is the only practical index through which instruments on record can be located. It would be a prohibitive burden to locate instruments on record without a tract index. It would certainly be a travesty of justice to hold that prospective purchasers are bound by the record, if for all practical purposes the record cannot be located.

The practice today by abstracters, attorneys, and others making title searches is to use the tract index rather than by the old means of the grantor-grantee indexes. Although the register of deeds still has to keep all the indexes, the grantor-grantee index is actually a carry over from the old system, and is only an additional tool available to title searchers for other purposes.

Under the tract index system the title is traced by searching the tract index for instruments pertaining to the tract to be searched. The names of the grantor and grantee are not material to this search.

We have considered several decisions from other jurisdictions that appear to have recording statutes similar to ours and which have held that an instrument will not give constructive notice of its contents unless it has been recorded in substantial compliance with their recording statutes, and that failure to properly index an instrument does not constitute substantial compliance with the recording statutes. See Ritchie v. Griffiths, 1 Wash. 429, 25 P. 341 (1890); Rice v. Taylor, 220 Cal. 629, 32 P.2d 381 (1934); Fleck v. Iowa Employment Security Commission, 233 Iowa 67, 8 N.W.2d 703 (1943), and other cases found in the Annotation in 63 A.L.R. 1057.

We have also noted cases that are holding contrary to the cases cited above, such as Deming v. Miles, 35 Neb. 739, 53 N.W. 665 (1892); Crook v. Chilvers, 99 Neb. 684, 157 N.W. 617 (1916), and Boyer v. Pahvant Mercantile & Investment Co., 76 Utah 1, 287 P. 188 (1930). However, in analyzing these cases we are inclined to believe that the rule or principle that they asserted was more applicable to the old grantor-grantee type recording systems than to the tract index system that we have in our state.

After considering all the statutes and all of the authorities cited in this opinion, and considering the practice in use by lawyers, lending agencies and abstracters, we conclude that a prospective purchaser cannot be deemed to have constructive notice of instruments that are not indexed in the tract index under the specific tract of real estate to which they pertain. We conclude that there must be substantial compliance with those sections of the recording laws that pertain to the matter of notice in order to give constructive notice. Failure to index an instrument in the tract index does not constitute such compliance.

The appellant also argues that if the error by the register of deeds in indexing the instrument under the wrong description deprives the instrument of giving constructive notice, the entries in the reception book, and in the grantor-grantee index books, would constitute sufficient notice to put a prudent person upon inquiry. The plain fact is that the reception book and grantor and grantee indexes only serve very limited purposes. The reception book would only be consulted for the purpose of determining whether there are any instruments on deposit with the register of deeds that have not yet been fully recorded, or to determine priorities between instruments if priority becomes an issue.

■ Under the statute and our holdings in Northwestern Improvement Co. v. Norris, *supra*, the actual instrument deposited with the register of deeds accords constructive notice of its execution only from the time of its deposit until the recording has been completed. After recording, the actual record made constitutes constructive notice. The reception book, therefore, is primarily being consulted by a title searcher for the limited purpose of determining whether there are any unrecorded instruments in the hands of the register of deeds. The tract

index which contains a record of every instrument that has ever been filed pertaining to any tract of land in the county is the composite index that directs a title searcher to all the instruments on record that affect each specific tract of land. A prospective purchaser or encumbrancer searching the records has a right to assume that the register of deeds has performed his duties correctly and has indexed every instrument correctly in the tract index. The ordinary prudent person searching the record to determine the title status to a specific tract of land would have no need to consult the grantor-grantee indexes, because the tract index discloses the names of the grantors and grantees of the instruments that pertain to a certain tract of land.

We see no material difference between the principle of substantial compliance with the recording sections pertaining to notice to constitute constructive notice, and the principle of sufficient information in the records to cause or require a person to make inquiry so as to be considered having actual notice of the instruments on record. The same standard should apply, since it is immaterial whether a subsequent purchaser looks at the record or not, he is bound by the record which he has a duty to search, and if such record is such that a person searching it should find the instrument, then the record is also such that it will give constructive notice. Statutes should receive a reasonable interpretation that is consonant with what the actual practice is among those to whom the statute has application.

We therefore conclude that under our modern practice of recording real estate transactions, there is no duty upon a prospective purchaser in so far as constructive notice is concerned to consult the grantor-grantee indexes or the reception book beyond the extent of determining whether there are any unrecorded instruments in the hands of the register of deeds that may not yet have been recorded and indexed. To require a person to check the grantor-grantee indexes and go through the entire reception book to determine whether all the instruments on record have been properly recorded and indexed would be to completely nullify the use of the tract index which is the modern tool used by anyone making a title search. Therefore, the defendants cannot be charged with information that may have been obtained from consulting the reception book or grantor-grantee indexes.

The plaintiff also contends that the abstracter had knowledge of the erroneous indexing within a couple of months after the mortgage was recorded, which knowledge of the abstracter must be imputed to the defendants, and therefore they cannot be considered encumbrancers without notice.

We can not agree with this contention. The relationship between an abstracter and persons who come into possession of an abstract prepared by an abstracter is not an agency type relationship. The liability of an abstracter is contractual in nature, in addition to the statutory liability imposed upon him. There is no evidence in this case to support a principal-agency relationship, and consequently any knowledge that employees of the abstracting firm may have acquired during the course of their work is not imputable to the defendants in this case.

Having concluded that appellants' mortgage as recorded did not give constructive notice, or any other notice of the execution of the instrument to the defendants, upon whom should the consequences of the failure of the register of deeds to properly index the instrument fall?

In Northwestern Improvement Co. v. Norris, *supra*, this court held that it was the duty of the grantor in a conveyance to protect his interest against any subsequent purchaser in good faith by making certain that the reservation and exception of minerals therein was properly recorded. The holding in effect is that the beneficiary of any interest in any real estate conveyance has a duty to protect his interest

**58**

against subsequent purchasers by making certain that the instrument conveying his interest is properly recorded, because he is the only person that by exercising some diligence can discover errors in the recording which a subsequent purchaser even by the exercise of the greatest diligence could not possibly do.

It is well recognized that every major lending agency operating in the state today will require an abstract of title continued to include all the instruments necessary to give it good title to the interest conveyed before it will release any money. Had the appellant followed this ·well established practice he would have promptly discovered the error of the register of deeds and could have had it corrected.

Plaintiff has cited Atlas Lumber Company v. Canadian-American Mortgage and Trust Company, 36 N.D. 39, 161 N.W. 604, in support of his contention that errors of the register of deeds should not be visited upon the persons leaving an instrument for recording. The facts in the present case are materially different from the facts in that case. In that case the clerk of c^urt erroneously showed the wrong lien as having been satisfied. There was no question but that the lien so erroneously satisfied had been properly filed and recorded. The principle of law stated in that case has no application to the case under consideration.

The facts in Northwestern Improvement Co. v. Norris, *supra*, are more analogous to the present case and the principle established in that case has application here. The principle is fully in accord with the general principle of law which appears to prevail in the majority of jurisdictions and stated in Section 64, Vol. 1, Patton on Titles, P. 218:

However, the majority rule is that, except as the existence of error is apparent on the face of the record, a subsequent purchaser is bound by what appears upon the record only, regardless of the contents of the original instrument. This rule places the loss upon the beneficiary in the instrument in the transcribing of which the error was made. As between him and the subsequent purchaser, he is the only one who had it in his power to make comparison and to have the error corrected, and upon him devolved the duty, not merely of filing his instrument for record, but of having it correctly recorded.

See also Sec. 114, Records and Recording Laws, 45 Am.Jur. P. 485, and for a fairly recent holding to the same effect, see, Commonwealth of Pa. to Use of Orris v. Roberts, 392 Pa. 572, 141 A.2d 393, 71 A.L.R.2d 1124.

For the reasons stated we affirm the decision of the trial court and the judgments entered by the trial court.

Since we have affirmed the trial court in the principal action, the issues raised in the appeal between the third party plaintiffs and third party defendant have become moot.

TEIGEN, J., and C. F. KELSCH, District Judge, concur.

KNUDSON and PAULSON, JJ., dissent.

ALVIN C. STRUTZ, C. J., and RALPH J. ERICKSTAD, J., deeming themselves disqualified did not participate; ADAM GEFREH, District Judge of the Third Judicial District, and C. F. KELSCH, District Judge of the Sixth Judicial District, sitting in their stead.