# IN THE SUPREME COURT
## STATE OF NORTH DAKOTA

### 2024 ND 157

Benjamin J. Nordquist,                                    Petitioner and Appellant

v.

Jessica Alonge, Stutsman County Auditor,

Maureen McGilvrey, Stutsman County

Recorder, and Stutsman County, a Politicial

Subdivision of the State of North Dakota,          Respondents and Appellees

### No. 20230329

Appeal from the District Court of Stutsman County, Southeast Judicial District, the Honorable Nicholas D. Thornton, Judge.

AFFIRMED IN PART, REVERSED IN PART.

Opinion of the Court by Bahr, Justice.

Joseph F. Larson II, Jamestown, ND, for petitioner and appellant.

Brian D. Schmidt (argued) and Scott K. Porsborg (on brief), Special Assistant State's Attorneys, Bismarck, ND, for respondents and appellees.

**Nordquist v. Alonge**
**No. 20230329**

**Bahr, Justice.**

[¶1]    Benjamin Nordquist appeals a judgment dismissing his petition for a writ of mandamus. We conclude the district court abused its discretion by determining the land conveyed in the 2018 and 2021 quitclaim deeds. We affirm the court's denial of Nordquist's petition. We affirm in part and reverse in part.

I

[¶2]    Diane and Duane Witzig owned Witzig's Fifth Addition located in Stutsman County near Jamestown. The Witzigs had the land surveyed and platted into three lots in 2014. The plat provided a "metes and bounds" boundary description to identify the 60.14 acres being platted. *See* Metes and Bounds, Black's Law Dictionary, 1184 (12th ed. 2024) (defining "metes and bounds" as "[t]he territorial limits of real property as measured by distances and angles from designated landmarks and in relation to adjoining properties;" "The method of describing a tract by limits so measured, esp. when the descriptions of the limits are arranged as a series of instructions that, if followed, result in traveling along the tract's boundaries"). The plat map depicts and sets forth three streets. The plat designates "6TH Street SW" as the north 60 feet of Witzig's Fifth Addition, except the east 33 feet which the plat designates as "17TH Avenue SW." The plat designates "10TH Street SW" as the south 60 feet of Witzig's Fifth Addition, except the east 33 feet which the plat designates as "17TH Avenue SW." The plat designates three lots and auditor's lots. The plat then provides the following "New Description: Lots 1 through 3, Block 1 of Witzig's Fifth Subdivision, being within Midway Township, Stutsman County, Extraterritorial Lands of the City of Jamestown, North Dakota." The signed owner's certificate of approval and dedication reads:

> Duane G. Witzig and Diane M. Witzig being the Owners and Proprietors of the above described tract of land has caused said tract of land to be platted as 'Witzig's Fifth Subdivision' shown on the plat and do hereby agree to said platting and dedication of 17th Avenue SW as shown.

The streets depicted on the plat map as 6th Street SW and 10th Street SW are not dedicated in the certificate of approval and dedication. The "New Description" does not mention the three streets depicted on the plat map.

[¶3]     Duane Witzig passed away in 2015. In 2018, Diane Witzig deeded the three lots to Gannon Van Gilder and Levi Hintz as joint tenants; they recorded the deed. The deed was to Lots 1, 2 and 3, Block 1 of Witzig's Fifth Subdivision, less and except the auditor's lots. Levi Hintz and Alecia Hintz, husband and wife, deeded their interest in the three lots to Gannon Van Gilder and Brandi Van Gilder, husband and wife, in 2021, who recorded the deed. Again, the deed was to Lots 1, 2 and 3, Block 1 of Witzig's Fifth Subdivision, less and except the auditor's lots. In 2022, Witzig provided a quitclaim deed to Nordquist for "[t]he North 60.00 feet, less and except the East 33.00 thereof, of Witzig's Fifth Subdivision[.]" The deed also described the conveyed land using metes and bounds. The North 60.00 feet, less the East 33.00, of Witzig's Fifth Subdivision is depicted as 6th Street SW on the plat map.

[¶4]     Nordquist attempted to record the quitclaim deed with Stutsman County. The Recorder refused to record the deed without a certificate of transfer statement from the Auditor. The Recorder explained: "Upon my initial review, the property description in the Quit Claim Deed did not match any previously recorded property descriptions in the Witzig's Fifth Addition plat. The Quit Claim Deed changed the current property description and also defined a platted parcel by metes and bounds." Thus, the Recorder did not record the deed and instead forwarded it to the Auditor.

[¶5]     After receiving Nordquist's quitclaim deed, the Auditor reviewed it to determine if she could affix the certificate of transfer statement. When reviewing the deed, she "noticed various irregularities." The first irregularity noticed by the Auditor "was that the description of property on the Quitclaim Deed had never been described before in any filing with the County." She explained: "After I reviewed the property description, it was apparent after reviewing the plat that the portion of the land attempted to be conveyed in the Quit Claim Deed was already contained in the 'New Description' on the Plat for Witzig's Fifth Addition." Thus, "[i]t appeared [to the Auditor] the Quit Claim Deed attempted to change an existing property description." The Auditor further explained:

> [S]ince Witzig's Fifth Addition had already been platted into block and lots, this Quit Claim Deed appeared to try to convey interest in portions of 3 separate previously identified lots on the plat. It was incredibly difficult to ascertain how the Quit Claim Deed would interact with the existing property description. I believed it would have been appropriate to replat the property to account for this new property description.

[¶6]     The second irregularity noticed by the Auditor is Diane Witzig previously conveyed Lots 1, 2 and 3, Block 1 of Witzig's Fifth Addition to Gannon Van Gilder and Levi Hintz by warranty deed recorded in June 2018, and Levi Hintz conveyed Lots 1, 2 and 3, Block 1 of Witzig's Fifth Addition to Gannon Van Gilder by quitclaim deed recorded in February 2021.

[¶7]     "As a result of these two irregularities," the Auditor explained, "there was substantial confusion in attempting to ascertain the property being conveyed in Nordquist's Quit Claim Deed." That is because "the description in the Quit Claim Deed changed the current property description," and "it did not appear Diane Witzig . . . had any ownership in Witzig's Fifth Addition after it was conveyed by the Warranty Deed recorded" in June 2018. Thus, the Auditor concluded she "could not accurately evaluate the property identified in the Quit Claim Deed to issue the Auditor's Certificate" unless the "property was replatted to account for the description on the Quit Claim Deed and clarity could be provided to ascertain ownership of the property[.]"

[¶8]     The Recorder provided Nordquist the following reasons for not recording the quitclaim deed: "The legal description contained in the deed is not a valid legal description in Stutsman County"; "The legal description you've attempted to create is part of property previously deeded by Diane Witzig to Gannon Van Gilder"; "The Auditor's Office cannot accept a new metes and bounds description and would require the land be surveyed and platted and the plat thereof recorded"; and "Each real estate instrument must have a legal description considered to be adequate by the recorder before such instrument will be accepted for recording."

[¶9]     Nordquist filed a petition for writ of mandamus requesting the district court issue a writ of mandamus requiring the Auditor "to sign certificate of transfer statement on the Quit Claim Deed dated November 14, 2022" and the Recorder "to record the Quit Claim Deed dated November 14, 2022[.]" After briefing and oral argument, the court entered an order and judgment denying the writ with prejudice.

II

[¶10]   "A petitioner for a writ of mandamus must show a clear legal right to performance of the act sought to be compelled and must establish no plain, speedy, and adequate remedy exists in the ordinary course of law." *Burgum v. Jaeger,* 2020 ND 251, ¶ 10, 951 N.W.2d 380 (quoting *Onstad v. Jaeger*, 2020 ND 203, ¶ 8, 949 N.W.2d 214). "To be enforceable

by mandamus, the law must require an act to be done; mandamus cannot compel an official's discretionary actions." *Berg v. Jaeger*, 2020 ND 178, ¶ 9, 948 N.W.2d 4. "The decision to issue a writ of mandamus is left to the sound discretion of the district court." *Kalvoda v. Bismarck Pub. Sch. Dist. #1*, 2011 ND 32, ¶ 20, 794 N.W.2d 454. This Court will not reverse a district court's denial of a writ of mandamus absent an abuse of discretion. *Larson v. N.D. Workforce Safety & Ins.*, 2022 ND 118, ¶ 17, 975 N.W.2d 552. "A court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, or it misinterprets or misapplies the law." *Id.*

III

A

[¶11] Nordquist argues the quitclaim deed did not change the legal description of the property.

[¶12] One of a recorder's duties is to record and file instruments. N.D.C.C. § 11-18-01. "[R]ecording documents is a ministerial action on the part of a county recorder." *Capps v. Weflen*, 2014 ND 201, ¶ 22, 855 N.W.2d 637; *see also Loran v. Iszler*, 373 N.W.2d 870, 874 (N.D. 1985) (referring to "the ministerial action of recording a mortgage"). Under N.D.C.C. § 11-18-02, a recorder may not record a deed that changes the current property description absent the auditor's certificate of transfer statement. Section 11-18-02 provides, in part:

> Except as otherwise provided in section 11-18-03, *the recorder shall refuse to receive or record any deed*, contract for deed, plat, replat, patent, auditor's lot, or any other instrument *that changes the current property description unless there is entered thereon a certificate of the county auditor* showing that a transfer of the lands described therein has been entered and that the delinquent and current taxes and delinquent and current special assessments against the land described in such instrument have been paid[.]

(Emphasis added.)

[¶13] Here, the Recorder determined the quitclaim deed changed the current property description and forwarded the deed to the Auditor rather than record it. Noting the quitclaim deed "purports to convey only a certain parcel within Witzig's Fifth Subdivision," the district court agreed Nordquist's "deed changes the current property description." Thus, the court concluded, "the Recorder is precluded from recording" the

5

quitclaim deed because "the auditor has not affixed a certificate of transfer to the 2022 deed."

[¶14]   "Deeds are interpreted in the same manner as contracts[.]" *Nevin v. Kennedy*, 2023 ND 33, ¶ 8, 987 N.W.2d 363, *reh'g denied* (Mar. 31, 2023). The interpretation of a contract is a question of law, which is fully reviewable on appeal. *4201 2nd Ave. W., LLC v. First State Bank & Tr.*, 2023 ND 43, ¶ 15, 987 N.W.2d 658; *Larson Latham Huettl LLP v. Burckhard*, 2022 ND 230, ¶ 15, 983 N.W.2d 169; *see also Matter of Guardianship of S.M.H.*, 2021 ND 104, ¶ 19, 960 N.W.2d 811 ("The legal conclusion of whether a deed is void is a question of law, fully reviewable on appeal."). Therefore, we review the quitclaim deed de novo to determine whether it changed the current property description.

[¶15]   "North Dakota uses a tract index system for recording real estate transactions, which makes all instruments easily accessible by focusing on the tract of land in question, rather than on the grantor or grantee of the land." *Swanson v. Swanson*, 2011 ND 74, ¶ 15, 796 N.W.2d 614. A tract index lists each recorded transaction related to each tract or specified parcel of land. *See* N.D.C.C. § 11-18-07; Tract Index, Tract, Black's Law Dictionary, *supra* at 918, 1803. Under North Dakota's tract index system, "the title is traced by searching for instruments, including mortgages, that pertain to the tract of land." *Swanson*, at ¶ 15. "The fundamental purpose of the recording statutes is to protect potential purchasers of real property against the risk that they may be paying out good money to someone who does not actually own the property that he is purporting to sell." *Id.* (quoting *Hanson v. Zoller*, 187 N.W.2d 47, 54 (N.D. 1971)). "The recording acts operate by making the history of the title involved in a real estate transaction readily available to a prospective purchaser, and by providing that the history so disclosed by the record is binding upon a prospective purchaser whether he consults the record or not." *Id.* (quoting *Hanson*, at 54).

[¶16]   Under N.D.C.C. § 11-18-07, a recorder records lots in a block separately in the tract index. The plat recorded on August 25, 2014 includes a "New Description." The "New Description" describes the Witzig's Fifth Subdivision as three tracts or parcels: Lots 1, 2 and 3. The "New Description" in the plat is the "current property description" under N.D.C.C. § 11-18-02. The quitclaim deed contains two legal descriptions of the transferred land. First, the deed grants to Nordquist: "The North 60.00 feet, <u>less and except</u> the East 33.00 thereof, of Witzig's Fifth Subdivision, Stutsman County, North Dakota, according to the Plat thereof filed as Doc. No. 0209929[.]" The deed then describes the transferred land by metes and bounds. The quitclaim deed does not use the plat's "current property description" of Lots 1, 2 or 3 or another currently recorded tract or parcel of land.

[¶17] The quitclaim deed does not use an existing tract currently recorded in Witzig's Fifth Subdivision. Instead, the deed attempts to convey a portion of the Witzig's Fifth Subdivision not previously recorded in the tract index as a tract or parcel of land. The description in the quitclaim deed therefore changes the property description. We conclude the district court did not misapply the law when it held the quitclaim deed changed the current property description. We further conclude the court's holding the law precludes the Recorder from recording the deed without a certificate of transfer from the Auditor is in accordance with the law. N.D.C.C. § 11-18-02.

B

[¶18] Nordquist argues the district court erred when it denied his request for an alternative writ of mandamus directing the Auditor to sign a certificate of transfer statement on the quitclaim deed.

[¶19] Section 57-02-39, N.D.C.C., provides, in part:

> If any tract or lot of land is divided into irregular shapes which can be described only by metes and bounds, or if any addition or subdivision which already has been platted into blocks and lots and subsequently sold into parts of blocks or lots which can be described only by metes and bounds . . . the owner of such tract or tracts, upon the request of the county auditor, shall have such land platted or replatted, as the case may be, into lots or blocks according to deeds on record.

[¶20] Under N.D.C.C. § 57-02-39, the Auditor has discretion to request Nordquist to replat the land if certain conditions are met. With regard to whether the conditions were met, the district court wrote, "Witzig's Fifth Subdivision 'already has been platted into blocks and lots[,]' and the 2022 deed purports to convey an interest in 'parts of blocks or lots which can be described only by metes and bounds[.]'" Because the Witzig's Fifth Subdivision had been platted into blocks or lots, and parts of the blocks or lots had been conveyed "which can be described only by metes and bounds[,]" the court concluded "the Auditor has properly requested an Auditor's plat under these circumstances."

[¶21] For purposes of N.D.C.C. ch. 57-02, General Property Assessment, "'Tract', 'lot', 'piece or parcel of real property', or 'piece or parcel of land' means any contiguous quantity of land in the possession of, owned by or recorded as the property of, the same claimant, person, or company." N.D.C.C. § 57-02-01(14). Witzig's Fifth Addition was platted into three lots in 2014. Because it has been divided into three lots, Witzig's Fifth Subdivision

7

is no longer a tract or lot of land as defined in N.D.C.C. § 57-02-01(14). Because the land transferred in the quitclaim deed is not described based on a currently recorded lot, the county auditor cannot certify that a transfer of the land described in the quitclaim deed has been entered and that taxes on the land described in the quitclaim has been paid. N.D.C.C. § 11-18-02. In other words, until the land is replatted, there is no tract of land in the tract index for the auditor to assess taxes and determine if taxes are due. We conclude the district court's conclusion the Auditor could request the land be replatted is in accordance with the law.

[¶22]   However, to the extent the district court's order can be read as determining the 2018 and 2021 deeds conveying Lots 1, 2 and 3 conveyed the north 60 feet, less the east 33 feet, of Witzig's Fifth Subdivision (depicted as 6th Street SW on the plat map), that determination was unnecessary for its decision and improper in this writ of mandamus proceeding.

[¶23]   In reaching its decisions, the district court wrote,

> Because the "new description" does not contain any exceptions, and because the "owner's certificate of approval and dedication" does not refer to "6TH Street SW," it appears the "new description"—of "Lots 1 through 3, Block 1 of Witzig's Fifth Subdivision"—encompasses the northerly parcel depicted on the map as "6TH Street SW[.]"

The court later wrote "it appears the grantor [of the quitclaim deed] did not hold title to the land at the time the deed was executed." In a footnote, the court again wrote, "it appears the grantor did not hold title to the land at the time the 2022 deed was executed."

[¶24]   Property ownership is an issue for a court to decide in an appropriate proceeding involving the individuals who claim ownership to the property. N.D.C.C. ch. 32-17; *Dennison v. N.D. Dep't of Hum. Servs.*, 2002 ND 39, ¶ 15, 640 N.W.2d 447 ("[A] quiet title action is a direct action to determine what, if any, interest each party has in a tract of land, and a court's decision shall adjudicate the nature and extent of the parties' claims and shall determine the validity, superiority, and priority of the claims."); *State v. Amerada Petroleum Corp.*, 71 N.W.2d 675, 679 (N.D. 1955) ("An action to quiet title is a direct action for the purpose of determining what, if any, interest each of the parties have in the land involved."). "A county recorder makes no judicial adjudication in filing documents." *Capps*, 2014 ND 201, ¶ 22; *cf. Frandsen v. Mayer*, 155 N.W.2d 294, 297 (N.D. 1967) ("An auditor's plat is made for taxation purposes for the convenience of the tax officials in

8

describing the property on the tax rolls and does not confer rights in or transfer title to land."). The purpose of this proceeding is not to determine property ownership, and all persons necessary for the adjudication of ownership of the Witzig's Fifth Addition are not parties to this proceeding. The district court abused its discretion by determining the 2018 and 2021 deeds conveying Lots 1, 2 and 3 conveyed the north 60 feet of the Witzig's Fifth Subdivision (depicted on the plat map as 6th Street SW). We reverse that portion of the court's order.

C

[¶25] The district court's conclusion the Auditor properly requested an Auditor's plat does not fully address Nordquist's arguments regarding the Auditor. Nordquist argues N.D.C.C. § 57-02-39 and N.D.C.C. § 11-13-12 are mutually exclusive and that the Auditor's request the land be replatted under section 57-02-39 did not authorize the Auditor to refuse to issue a certificate of transfer statement under section 11-13-12. He argues the Auditor "can issue the tax transfer certificate when no taxes are [owed] and can compel platting under § 57-02-39 as well regardless of tax status." According to Norquist, under section 11-13-12 the Auditor "reviews the county tax records to ministerially determine if real estate taxes are [owed] or not. If real estate taxes are current, the auditor certifies this and the deed is recordable. If not, the auditor certifies the amount [owed.]" (Internal citation omitted.)

[¶26] The district court did not directly address whether the Auditor had discretion under N.D.C.C. § 11-13-12 to refuse to issue a certificate of transfer statement pending compliance with her request the land be replatted. We conclude it is unnecessary to address the issue under the facts of this case.

[¶27] Under N.D.C.C. § 11-13-12(2), when a deed "is presented to the county auditor for transfer, the auditor shall ascertain . . . whether there are current taxes . . . against the land described in the instrument." The statute goes on, "If there are current taxes . . . against the land described in the instrument, the auditor shall place a statement on the instrument showing the amount of any current taxes[.]" *Id.* Whether an auditor's duty under section 11-13-12(2) to issue a certificate of transfer statement is mandatory or discretionary, an auditor can only ascertain taxes due and issue a certificate of transfer statement if the auditor can determine "the land described in the instrument."

[¶28] In the present case, no tract or parcel exists that corresponds to the conveyance described in the quitclaim deed. Absent an existing description of land in the tract index

9

system, the Auditor cannot ascertain whether taxes are due and issue a certificate of transfer statement. It is unclear based on the record whether the land conveyed in the quitclaim deed is separate and distinct from the three lots in the Witzig's Fifth Subdivision, or whether the land conveyed in the quitclaim deed includes portions of the lots. Until the land conveyed in the quitclaim deed is replatted as requested by the Auditor, the Auditor cannot locate the parcel in the tract index system. The Auditor cannot fulfill her duty of issuing a certificate of transfer statement when no tract of land is identified in the deed.

[¶29]   We conclude Nordquist has not demonstrated a clear legal right to have the Auditor issue a certificate of transfer statement when there is no plat identifying a tract of land to record in the tract index system.

IV

[¶30]   We conclude the district court abused its discretion by determining the 2018 and 2021 deeds conveying Lots 1, 2 and 3 conveyed the north 60 feet of the Witzig's Fifth Subdivision. We reverse that part of the court's order. We affirm the court's conclusion Nordquist has not demonstrated "a clear legal right to the performance of the particular acts sought to be compelled by the writ." We affirm the court's denial of Nordquist's petition.

[¶31]   Jon J. Jensen, C.J.
        Daniel J. Crothers
        Lisa Fair McEvers
        Jerod E. Tufte
        Douglas A. Bahr

10