2014 ND 34

**Craig ANDERSON, as assignee of First Western Bank and Trust, Plaintiff and Appellee**

**v.**

**Marvin ZIMBELMAN, Melanie Zimbelman, HIS Electric, Inc., Roger Sundsbak, George Bitz, Northern Livestock Auction, Mike Bryn dba Mike's Body Paint & Glass, State of North Dakota, acting through the State Tax Commissioner, and all other persons unknown claiming any estate or interest in, or lien or encumbrance upon, the proper-**

ty described in the Complaint, Defendants

Roger Sundsbak, George Bitz, and Northern Livestock Auction, Appellants.

No. 20130207.

Supreme Court of North Dakota.

Feb. 13, 2014.

James Cailao (argued), Bismarck, ND, and Jon R. Brakke (on brief), Fargo, ND, for plaintiff and appellee.

Sean Thomas Foss, Fargo, ND, for appellants.

CROTHERS, Justice.

[¶ 1] Roger Sundsbak, George Bitz and Northern Livestock Auction (collectively "Northern Livestock") appeal a district court judgment granting Craig T. Anderson's motion for summary judgment and denying Northern Livestock's motion to amend their counterclaim. Anderson is First Western Bank & Trust's (the "Bank") assignee. Northern Livestock argues the district court erred as a matter of law by entering summary judgment in favor of Anderson, by failing to enter summary judgment in favor of Northern Livestock's counterclaim for specific performance and by failing to provide sufficient findings of fact and conclusions of law to permit appellate review of its decision denying Northern Livestock's cross-motion for summary judgment. We affirm.

I

[¶ 2] Marvin and Melanie Zimbelman executed three mortgages on real property in McHenry County in favor of First Western Bank & Trust. The first mortgage secured a promissory note to the Bank for $150,750 and was recorded March 13, 2006. The second mortgage secured a promissory note to the Bank for $131,240 and was recorded on May 15, 2007. The third mortgage secured a promissory note to the Bank for $327,400 and was recorded on December 31, 2008. As of February 25, 2013, the Zimbelmans were indebted on all three mortgages in amounts exceeding the combined principal balance of the three notes.

[¶ 3] Northern Livestock obtained an interest in the real property by a judgment against Melanie Zimbelman for $727,495.41, docketed on September 12, 2008. On September 18, 2009, Northern Livestock executed on its judgment, directing the McHenry County Sheriff to satisfy the September 12, 2008 judgment against Melanie Zimbelman out of her property. The McHenry County Sheriff issued a notice of levy for Melanie Zimbelman's property on October 14, 2009. The Bank bid $495,000 at a Sheriff's sale on November 10, 2009 and received a certificate of sale for the property. However, the Bank did not pay $495,000 to the Sheriff, and the Sheriff returned the execution unsatisfied. The Bank paid $5,097.50 in commission and fees for the sale.

[¶ 4] The Bank and Sundsbak signed an agreement regarding the real property on December 13, 2010, and Bitz signed the agreement on January 5, 2011. The agreement stated the Bank paid fees and commissions to the McHenry County Sheriff, but did not pay the balance of their bid. It also stated the certificate of sale was issued with the knowledge and consent of Northern Livestock. The parties agreed Northern Livestock's judgment was subject and subordinate to the Bank's mortgages. The parties agreed Northern Livestock would assign any claim or interest they had in the certificate of sale to the Bank in exchange for the Bank releasing any claim it had against Northern Live-

stock for reimbursement of the fees and commissions paid to the Sheriff. The parties stipulated foreclosure of the mortgages would extinguish Northern Livestock's judgment lien.

[¶5] The Zimbelmans defaulted on the notes secured by the 2006, 2007 and 2008 mortgages. Because the Zimbelmans were unable to cure the defaults, the amounts due were accelerated. The Bank brought this action foreclosing the mortgages and naming Northern Livestock as a defendant because of its judgment lien. The Bank later substituted Anderson under an assignment agreement.

[¶6] Northern Livestock alleged that only the Bank's first two mortgages had priority over their judgment lien, while the third mortgage was subordinate. Northern Livestock also alleged that after paying the Bank's first two mortgages, the Bank's bid of $495,000 created a $210,977.93 surplus from the Sheriff's sale, proceeds which Northern Livestock was entitled to on debt, conversion, fraud and specific performance grounds. Anderson filed a motion for summary judgment claiming Northern Livestock waived their rights to the alleged surplus by subordinating their judgment to the Bank's mortgages in the 2010 agreement between Northern Livestock and the Bank. Northern Livestock alleged Anderson did not establish entitlement to judgment as a matter of law and summary judgment should be granted for their claim that Anderson should pay them the surplus from the 2009 sale. The district court granted Anderson's motion for summary judgment on the foreclosure claim and denied Northern Livestock's motion to amend their counterclaim.

## II

[¶7] This Court's standard of review for summary judgment is well-established:

"Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record."

*Arndt v. Maki*, 2012 ND 55, ¶10, 813 N.W.2d 564 (quoting *Saltsman v. Sharp*, 2011 ND 172, ¶4, 803 N.W.2d 553).

[¶8] Northern Livestock argues summary judgment in favor of Anderson was improper because factual disputes existed regarding execution of the 2010 agreement, the agreement was not a valid and enforceable contract and even if the agreement was a valid contract, Anderson was not entitled to judgment as a matter of law.

## A

[¶9] Northern Livestock seeks to avoid enforcement of the agreement by alleging it was actually and constructively

fraudulently induced to enter into the 2010 agreement with the Bank. Actual fraud requires proof of intent to deceive. N.D.C.C. § 9–03–08. "An individual asserting fraud must prove it by clear and convincing evidence," and "[f]raud is never presumed." *First Union Nat'l Bank v. RPB 2, LLC*, 2004 ND 29, ¶ 22, 674 N.W.2d 1. Rule 56(e)(1), N.D.R.Civ.P., requires affidavits supporting summary judgment motions to "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." "Affidavits containing conclusory allegations on an essential element of a claim are insufficient to raise a genuine issue of material fact." *Perius v. Nodak Mut. Ins. Co.*, 2010 ND 80, ¶ 18, 782 N.W.2d 355.

[¶ 10] Northern Livestock presented only Sundsbak's affidavit to support its fraud claims. Sundsbak's affidavit asserts he and Bitz did not participate in drafting the 2010 agreement. Sundsbak's affidavit asserts an unnamed Bank representative told him the Bank's attorney "screwed up" and Bitz and Sundsbak needed to sign the agreement so the Bank could get the money from the sale to pay off its liens. Sundsbak claims he and Bitz thought the Bank was speaking as their representative because they personally banked with First Western, separate from Northern Livestock. Northern Livestock further alleges the agreement falsely stated Northern Livestock agreed to the issuance of the certificate of sale to the Bank and agreed all three Bank mortgages were superior to their interest.

[¶ 11] Sundsbak's affidavit does not demonstrate the existence of a genuine issue of disputed material fact. It is of no consequence that Sundsbak and Bitz did not participate in drafting the agreement. It is a true representation that a Bank representative said they "screwed up" and they needed Northern Livestock's signatures to get the money from the sale. Because of their individual transactions with the Bank, Sundsbak and Bitz misconstrued the duty the Bank owed them when it conducted business with Northern Livestock. That the agreement stated the certificate of sale was issued to the Bank with the knowledge and consent of Northern Livestock was a recital in the agreement that Sundsbak and Bitz knowingly signed and is based in a lack of objection from Northern Livestock when the certificate of sale was issued and the execution was returned unsatisfied. Finally, the statement that the judgment lien would be inferior to the Bank's mortgages is an operative term of the agreement, not a misrepresentation of fact that induced Northern Livestock to consent to the agreement. Therefore, Northern Livestock failed to establish genuine issues of material fact precluded summary judgment on its claim actual fraud prevents enforcement of the agreement.

[¶ 12] Constructive fraud requires a breach of duty leading to an advantage for the party misleading. N.D.C.C. § 9–03–09(1). "The duty, a breach of which supports an action for constructive fraud, is generally a result of the relationship between the parties," and "[o]ne's implicit faith in another's honesty and integrity is insufficient to establish a fiduciary relationship, as regarding constructive fraud." *Asleson v. West Branch Land Co.*, 311 N.W.2d 533, 539–40 (N.D. 1981). No qualifying duty existed between the Bank and Northern Livestock. Sundsbak's and Bitz's history of personal banking with the Bank does not create a duty for the Bank to protect their individual interests when dealing with Northern Livestock. *See American Bank Center v. Wiest*, 2010 ND 251, ¶ 31, 793 N.W.2d 172

("The relationship between a bank and its customers is viewed as a debtor-creditor relationship which does not ordinarily impose a fiduciary duty upon a bank.") (quoting *First Nat'l Bank & Trust Co. v. Brakken,* 468 N.W.2d 633, 637 (N.D.1991)). Absent the required relationship, Northern Livestock's effort to set aside the agreement based on constructive fraud also fails.

## B

[¶ 13] Northern Livestock argues that the 2010 agreement was an unenforceable contract because the Bank had a duty to pay the Sheriff's fees, that the fee payment was past performance and therefore invalid consideration and that because no valid claim for reimbursement existed, a release from liability for reimbursement cannot constitute consideration. Anderson argues the lack of consideration was not raised in the district court. Northern Livestock raised the consideration issue in its answer and counterclaim to Anderson's second amended complaint.

[¶ 14] Section 11–15–08(1), N.D.C.C., states: "[T]he sheriff is entitled to collect commissions on behalf of the county on all moneys received and disbursed by the sheriff on an execution . . . as follows." Section 11–15–08(2)–(3), N.D.C.C., goes on to state that "if no sale is held . . . the sheriff may not collect a commission," and that "[i]f personal property is taken by the sheriff on an execution . . . and applied in satisfaction of the debt without sale, the sheriff is entitled to collect the commission . . . upon the appraised value of the property."

[¶ 15] Serious question exists whether the Sheriff should have received a commission in this case. The Sheriff levied upon the property, and the Bank made a purchase bid. While the Bank paid the Sheriff's fees, in a highly unusual series of transactions, no other moneys were received and disbursed by the Sheriff on execution because the Bank never paid the purchase amount it bid. The Sheriff returned the execution "wholly unsatisfied." Despite the Bank paying nothing, it was issued a certificate of sale.

[¶ 16] The Attorney General has provided guidance for the circumstances under which a commission should be paid to the Sheriff:

"N.D.C.C. [§ ] 11–15–08(1) unambiguously provides that the sheriff will receive the commissions on only moneys 'received and disbursed by him' in enforcement of the court process. If the sheriff has not received and disbursed moneys as required by this section, the sheriff is not entitled to the commission pursuant to N.D.C.C. [§ ] 11–15–08(1). . . . However, if the actual property levied upon is not used to satisfy the debt, the sheriff cannot receive a commission pursuant to N.D.C.C. [§ ] 11–15–08."

N.D. Op. Att'y Gen. 91–9 (June 21, 1991). In this case, the Sheriff levied upon the property, conducted an auction during which the Bank offered the winning bid and issued a certificate of sale to the Bank without receiving sale proceeds. Yet the parties, the Sheriff and the district court somehow concluded the purchase was not made to satisfy the Bank's outstanding mortgages, and the mortgages survived the purchase and later were foreclosed.

[¶ 17] It appears the Sheriff was not entitled to a commission because he did not receive and disburse moneys in enforcement of the execution of judgment and because the property levied upon was not used to satisfy the Zimbelman's debt to the Bank. The Bank therefore likely voluntarily paid the commission and did not pay under an existing duty.

[¶ 18] "The existence of consideration is a question of law." *Maragos v. Norwest Bank Minnesota, N.A.,* 507 N.W.2d 562, 565 (N.D.1993). "A written instrument is presumptive evidence of a consideration." N.D.C.C. § 9–05–10. "[F]orbearance from bringing suit can constitute good consideration." *Maragos,* at 565 (quoting *Farmers Union Oil Co. v. Maixner,* 376 N.W.2d 43, 46 (N.D.1985)). Consideration in the agreement is that Northern Livestock agreed to subordinate their judgment lien to the Bank's mortgages and to give up any claim they had to the certificate of sale, while the Bank agreed not to seek reimbursement or compensation for the fees and commissions paid to the Sheriff. Consideration for the agreement did not consist of paying commissions and fees to the Sheriff, but rather forbearing bringing action for reimbursement for the fees paid. No part of the consideration constituted past performance.

[¶ 19] The Bank's agreement not to make a claim for reimbursement constituted consideration because "[r]efraining from bringing a suit may be sufficient consideration." *Keen v. Larson,* 132 N.W.2d 350, 356 (N.D.1964) (citing 17 C.J.S. *Contracts* § 104(1)). "A compromise of a bona fide controversy constitutes a good consideration for a promise." *Keen,* at 357 (citing *McGlynn v. Scott,* 4 N.D. 18, 58 N.W. 460 (1894)). Although no legal requirement apparently existed for either party to pay the Sheriff's commission and fees, when the agreement was signed neither party realized N.D.C.C. § 11–15–08 did not require such a payment. At that time, the parties disputed who was responsible for paying the fees, resulting in a bona fide controversy. Because a bona fide controversy existed concerning the Sheriff's commission, the Bank's forbearance from making a claim against Northern Livestock constituted valid consideration for the agreement.

C

[¶ 20] Northern Livestock argues that if the agreement was valid, the district court erred in concluding Anderson was entitled to judgment as a matter of law because the Bank's bid was irrevocable and the surplus should have been paid before the agreement was made subordinating Northern Livestock's future interests. We disagree.

[¶ 21] The 2009 execution of judgment order was returned wholly unsatisfied. Northern Livestock took no action to clarify whether surplus bid funds should have been distributed to them, or even whether the Bank actually made a valid bid at the Sheriff's sale. The subsequent agreement clearly and unambiguously subordinated Northern Livestock's 2008 judgment to the Bank's mortgages and contemplated that foreclosure of the mortgages would extinguish the judgment lien. No question of law exists whether the agreement subordinated Northern Livestock's interests and whether the surplus at the time of the Bank's bid should have been paid to Northern Livestock.

III

[¶ 22] In response to Anderson's motion for summary judgment, Northern Livestock counterclaimed that it was entitled to summary judgment on its claim for specific performance and that it should be awarded the surplus from the Sheriff's sale. This action stems from a district court judgment granting Anderson's motion for summary judgment, foreclosing the Bank's mortgages Anderson received as an assignee. The 2010 agreement subordinating Northern Livestock's judgment lien to the Bank's mortgages contemplated that outcome upon foreclosure of

the mortgages. Northern Livestock's counterclaim for the surplus, however, stems from the judgment lien execution in a different lawsuit involving only Melanie Zimbelman. We are unable to address Northern Livestock's specific performance claim because Northern Livestock improperly raised the issue in this case. That claim instead should have been raised in the judgment execution case against Melanie Zimbelman.

## IV

[¶ 23] Northern Livestock argues the district court's memorandum opinion and findings of fact and conclusions of law do not comply with Rule 52(a)(1), N.D.R.Civ.P., requiring that "[i]n an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately." Rule 52(a)(3), N.D.R.Civ.P., however, states, "The court is not required to state findings or conclusions when ruling on a motion under Rule 12 or 56, or unless these rules provide otherwise, on any other motion." This case involved a motion for summary judgment under Rule 56, and the district court therefore was not required to make findings regarding Northern Livestock's four claims underlying their counterclaim. The district court's memorandum opinion and findings of fact and conclusions of law was appropriate.

## V

[¶ 24] We conclude that the district court did not err as a matter of law by entering summary judgment in favor of Anderson, that the district court did not err as a matter of law by declining to enter summary judgment in favor of Northern Livestock on their specific performance counterclaims and that the district court's findings of fact and conclusions of law

were appropriate under Rule 52(a)(3), N.D.R.Civ.P. We affirm the district court's judgment granting Anderson's motion for summary judgment and denying Northern Livestock's motion to amend their counterclaim.

[¶ 25] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, MARY MUEHLEN MARING, S.J. and DALE V. SANDSTROM, J.

[¶ 26] The Honorable William A. Neumann, S.J., sitting in place of Kapsner, J., disqualified. The Honorable Lisa Fair McEvers was not a member of the Court when this case was heard and did not participate in this decision. The Honorable Mary Muehlen Maring, S.J., sitting.