2014 ND 201

**Patricia R. CAPPS, f/k/a Patricia Anderson, Terrel A. Anderson, a/k/a Terral Anderson, Plaintiffs, Appellants and Cross–Appellees**

**and**

**The Estate of Ruth A. Nelson, Deceased, Plaintiff and Appellee**

v.

**Colleen L. WEFLEN, a/k/a Colleen Weflen, a single woman, Marleen Weflen, f/k/a Marleen W. Tiedt, Sharon Kruse,**

a/k/a Sharon O. Kruse, f/k/a Sharon Weflen, a married woman dealing in her sole and separate property, Catherine Harris, f/k/a Cathy Gunderson, a single woman, Norris Weflen, a/k/a Norris L. Weflen, a single man, Windsor Bakken, LLC, a Delaware Limited Liability Company, Defendants, Appellees and Cross–Appellants

and

John H. Holt Oil Properties, Inc., Atomic Oil & Gas, a Colorado Limited Liability Company, Defendants

and

Gulfport Energy Corporation, EOG Resources, Inc., Whiting Oil and Gas Corporation, Defendants, Appellees and Cross–Appellants

and

Cade Oil and Gas, LLC, Gerald C. Wools, Penny Brinks, Michael Lee, Gwen Hassan, and Melissa Kellor, Defendants

Penny Brinks, Michael Lee, Gwen Hassan, and Melissa Kellor, Appellees.

No. 20140110.

Supreme Court of North Dakota.

Oct. 31, 2014.

Zachary E. Pelham (argued), Patrick W. Durick (on brief) and Benjamin W. Keup (on brief), Bismarck, N.D., for plaintiffs, appellants and cross-appellees.

Amy L. De Kok (argued), Lawrence Bender (on brief) and Jillian R. Rupnow (on brief), Bismarck, N.D., for defendants, appellees and cross-appellants EOG Resources, Inc.

Richard P. Olson (appeared), Andrew T. Forward (on brief) and Wanda L. Fischer (on brief), Minot, N.D., for defendants, appellees and cross-appellants Cathy Gunderson, Sharon Kruse, Colleen Weflen, Marleen Weflen and Norris Weflen.

Monte L. Rogneby (appeared), Bismarck, N.D., for defendants, appellees and cross-appellants Gulfport Energy Corporation and Windsor Bakken LLC.

David J. Smith (argued) and Tyler J. Malm (on brief), Bismarck, N.D., for defendants and appellees Penny Brinks, Michael Lee, Gwen Hassan, and Melissa Kellor.

Paul J. Forster (on brief), Bismarck, N.D., for defendant, appellee and cross-appellant Whiting Oil and Gas Corporation.

SANDSTROM, Justice.

[¶ 1] Patricia Capps and others ("Capps") appeal, and Colleen Weflen and others ("Weflens") cross-appeal, from a judgment quieting title to certain Mountrail County mineral interests in the Capps and the heirs of Ruth Nelson's estate ("Hassans"). Because the district court erred as a matter of law in ruling the Weflens did not comply with the notice requirements in the abandoned mineral statutes, N.D.C.C. ch. 38–18.1, and because those requirements are constitutional, we reverse and remand for entry of judgment quieting title to the subject mineral interests in the Weflens.

I

[¶ 2] In 1975, Ruth Nelson conveyed the subject real property in Mountrail County to Olaf and Rose Weflen, reserving to herself one-half of the minerals in the property. The deed was recorded the same year. In 1979, Nelson granted to Patricia Capps and Terrel Anderson "an undivided 1/2 mineral interest" in the property, and the deed explained "[i]t is the intent hereof to transfer a 1/2 interest in and to the remaining minerals." Nelson died later in 1979, and this 1979 mineral deed was not recorded until 2009.

[¶ 3] The Weflens, who are the successors-in-interest to Olaf and Rose Weflen, currently own the subject property. On December 28, 2005, the Weflens published in the Mountrail County Promoter a notice of lapse of mineral interest dated November 29, 2005. Subsequent notices were published on January 4 and 11, 2006. On January 13, 2006, the Weflens sent copies of the notice of lapse by certified mail, return receipt requested, with restricted delivery to the two last known addresses of Nelson which appeared in the recorded 1975 deed, in Tacoma, Washington, and a recorded 1973 oil and gas lease, in Lyons, Oregon. Both mailings were returned undelivered, and no statement of claim was filed within 60 days after the first publication of the notice of lapse. On March 6, 2006, the Weflens recorded a termination of mineral interest, affidavit of publication, affidavit of mailing, and notice of lapse of mineral interest with the Mountrail County recorder.

[¶ 4] While on a North Dakota hunting trip in 2008, Patricia Capps' husband and her brother noticed oil wells in the area of the Weflens' property. Patricia Capps contacted an attorney and filed a statement of claim in 2008. In 2009, the Capps

recorded the 1979 mineral deed and brought this action against the Weflens seeking to quiet title to their mineral interests. The estate of Ruth Nelson and the Hassans were eventually joined as parties. After a series of cross-motions for summary judgment, the district court ruled the Weflens had failed to comply with the notice requirements in the abandoned mineral statutes, N.D.C.C. ch. 38–18.1, and therefore they had no claim to a one-half mineral interest reserved by Nelson in 1975. Although other claims between the parties were unresolved, the court certified the judgment as final under N.D.R.Civ.P. 54(b), and the Weflens appealed. In *Capps v. Weflen*, 2013 ND 16, ¶ 1, 826 N.W.2d 605, this Court dismissed the appeal, concluding the district court abused its discretion in directing entry of a final judgment. The major remaining issue before the court, a dispute between the Capps and the Hassans, was whether Nelson's 1979 deed to the Capps conveyed all of the mineral interests held by Nelson or only one-half of her remaining one-half interest. On cross-motions for summary judgment, the court ruled as a matter of law the 1979 deed conveyed only one-half of Nelson's one-half interest in the minerals to the Capps, and the Hassans owned the other one-quarter interest reserved by Nelson in the deed.

[¶ 5] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal and cross-appeals were timely under N.D.R.App.P. 4. We have jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 28–27–01.

## II

[¶ 6] The dispositive issue raised by the Weflens in their cross-appeal is whether the district court erred in ruling on summary judgment that the Weflens failed to comply with the notice provisions of the abandoned mineral statutes, N.D.C.C. ch. 38–18.1, as they existed during the abandonment procedure in 2005 and 2006. *See Larson v. Norheim*, 2013 ND 60, ¶ 10, 830 N.W.2d 85 (law in effect at time of abandonment procedure governs).

[¶ 7] This Court's standard of review for summary judgment is well-established:

"Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record."

*Anderson v. Zimbelman*, 2014 ND 34, ¶ 7, 842 N.W.2d 852 (quoting *Arndt v. Maki*, 2012 ND 55, ¶ 10, 813 N.W.2d 564).

### A

[¶ 8] "Rights of property and of person may be waived, surrendered, or lost by neglect in the cases provided by

law." N.D.C.C. § 1–01–08. A mineral interest is deemed to be abandoned if it is unused for 20 years, and N.D.C.C. ch. 38–18.1 provides the procedure for a surface owner to succeed to the ownership of an abandoned mineral interest under the land. *Peterson v. Jasmanka ex rel. Clark*, 2014 ND 40, ¶ 12, 842 N.W.2d 920. There is no dispute that the subject mineral interests were unused for more than 20 years within the meaning of N.D.C.C. § 38–18.1–03, and that no statement of claim was filed within 60 days after first publication of the notice of lapse. *See* N.D.C.C. § 38–18.1–05. The method for providing notice of lapse of mineral interests is contained in N.D.C.C. § 38–18.1–06(1) and (2), which provided during the relevant time period:

1. Any person intending to succeed to the ownership of a mineral interest upon its lapse shall give notice of the lapse of the mineral interest by publication.

2. The publication provided for in subsection 1 must be made once each week for three weeks in the official county newspaper of the county in which the mineral interest is located; however, if the address of the mineral interest owner is shown of record or can be determined upon reasonable inquiry, notice must also be made by mailing a copy of the notice to the owner of the mineral interest within ten days after the last publication is made.

■ [¶ 9] Because the abandoned mineral statutes are in derogation of the common law, courts "must review for strict construction and application of statutory requirements." *Spring Creek Ranch, LLC v. Svenberg*, 1999 ND 113, ¶ 10, 595 N.W.2d 323. The district court listed three reasons why the Weflens failed to comply with the statutory provisions: 1)

the Weflens "had knowledge that Ruth Nelson was dead at the time they mailed" the notice of lapse to her addresses of record, and "[m]ailing notice to a dead person at their address of record is absurd;" 2) "[m]ailing notice certified, restricted delivery is not required and mailing notice to a dead person by certified, restrictive delivery guarantees notice will not be received by the mineral owner;" and 3) because "property devolves to the deceased's heirs upon death" under the provisions of the North Dakota Uniform Probate Code, N.D.C.C. tit. 30.1, the record owner was no longer the actual owner, and therefore the actual owner's address "did not appear of record" which necessitated a "reasonable inquiry" for the address of the actual mineral interest owner. The court's rationale conflicts with N.D.C.C. ch. 38–18.1 and our interpretations of those provisions.

[¶ 10] First, whether the Weflens had actual knowledge of Nelson's death at the time of mailing is disputed, but this is not a material fact. This Court held in a series of 2011 cases that a surface owner is required to conduct a "reasonable inquiry" under N.D.C.C. § 38–18.1–06(2) only if the mineral owner's address does not appear of record. *See Johnson v. Taliaferro*, 2011 ND 34, ¶ 11, 793 N.W.2d 804; *Sorenson v. Felton*, 2011 ND 33, ¶ 14, 793 N.W.2d 799; *Sorenson v. Alinder*, 2011 ND 36, ¶ 6, 793 N.W.2d 797. Here the Weflens attempted to notify Nelson by mail through two of her addresses that were "of record." The question about actual knowledge of an incorrect record address we left open in *Felton*, at ¶ 14, was quickly answered in the *Alinder* case, which defeats the court's reliance on the Weflens' alleged knowledge of Nelson's death to require a reasonable inquiry here. This Court in *Alinder*, at ¶ 6, relied upon *Felton* and *Taliaferro* in ruling no reasonable inquiry was required where the surface owner mailed the notice

of lapse to the mineral interest owners' address of record in 2007, even though the mineral interest owners had died in 1980 and 1999, respectively. Because the mineral interest owners in *Alinder* had obtained their interest in 1953 and had not used the minerals for more than 50 years, the surface owner could have been charged with the same knowledge of the mineral owner's likely death the court attributed to the Weflens in this case. Yet, this Court stated, "Based on this record, [the surface owner] complied with the mailing requirement of N.D.C.C. § 38–18.1–06(2), and the district court erred in requiring [the surface owner] to also conduct a 'reasonable inquiry' to establish compliance with N.D.C.C. § 38–18.1–06." *Alinder*, at ¶ 6. *Alinder* reinforces our conclusion in *Felton* that the address of record need not be the mineral interest owner's correct address for the mailing of the notice of lapse to satisfy the statutory requirement. *See Felton*, at ¶ 15; *see also Taliaferro*, at ¶¶ 10–11. There is nothing "absurd" about this result "because [the mineral owner and her heirs] would have received notice if [they] had kept [the mineral owner's] address of record current." *Felton*, at ¶ 14. The district court's reasoning conflicts with this Court's precedents.

[¶ 11] Second, the district court's conclusion that the Weflens' use of certified mail with restricted delivery violates N.D.C.C. § 38–18.1–06(2) is not supported by the law. "Where constitutional and statutory provisions are clear and unambiguous, it is improper for the courts to attempt to construe the provisions so as to legislate additional requirements or proscriptions which the words of the provisions do not themselves provide." *Haggard v. Meier*, 368 N.W.2d 539, 541 (N.D. 1985); *see also* N.D.C.C. § 1–02–05; *Aanenson v. Bastien*, 438 N.W.2d 151, 153 (N.D.1989). The abandoned mineral statutes do not specify what type of "mailing" is required and do not prohibit any particular type of mailing. Because certified mail is not prohibited, the Weflens were free to use certified mail for mailing the notice of lapse. While restricted delivery may or may not be problematic, we need not decide the issue because there is no evidence in the record the omission of this phrase would have made any difference.

[¶ 12] Third, the obvious purpose of statutory schemes like N.D.C.C. ch. 38–18.1 for the reversion of severed mineral interests to the owner of the surface interests is "to encourage the exploitation of mineral resources and clear title of old, unused mineral claims." V. Gulbis, Annot., *Validity and construction of statutes providing for reversion of mineral estates for abandonment or nonuse*, 16 A.L.R.4th 1029, 1034 (1982); *cf. Schwab v. Zajac*, 2012 ND 239, ¶ 28, 823 N.W.2d 737 ("One purpose of the Marketable Record Title Act is to simplify and facilitate land transactions from the record itself."). The district court's ruling that the owner's address did not appear of record because the mineral interests devolved to Nelson's heirs upon her death under the Uniform Probate Code again ignores this Court's precedent and strips the abandoned minerals statutes of their utility. In *Alinder*, 2011 ND 36, ¶ 6, 793 N.W.2d 797, this Court made it clear that when the mineral interest owners of record are deceased, the notice must still be mailed to the address of the deceased owners of record. Moreover, the court's interpretation would place an impossible burden on surface owners and essentially relieve mineral interest owners and their heirs of any obligation to make minimal uses of their interests under N.D.C.C. § 38–18.1–03 to prevent lapse. *See generally Estate of Christeson v. Gilstad*, 2013 ND 50, ¶¶ 8–9, 829 N.W.2d 453. Because the possibility of death is not

confined to the elderly, a surface owner could not be certain whether the mineral interest owner of record was deceased. The surface owner would be required to make a "reasonable inquiry" in every case, obliterating the statutory option under N.D.C.C. § 38–18.1–06(2) of mailing the notice of lapse to the address of the mineral interest owner shown of record and prolonging uncertainty of record titles. Here it is undisputed that Nelson died in Oregon in 1979, no obituary or death notice was published in a North Dakota newspaper, no one informed the Weflen family of her death, and Nelson's estate had not been administered when the Weflens mailed the notices of lapse to her addresses of record in 2006. The court erred in ruling the Weflens needed to search for heirs of a dead mineral interest owner whose addresses appeared of record to satisfy the requirements of N.D.C.C. § 38–18.1–06(2).

[¶ 13] We conclude a surface owner is required to conduct a reasonable inquiry only if the mineral owner's address does not appear of record, even if the surface owner knows the mineral owner whose address appears of record is deceased. The district court erred as a matter of law in ruling the Weflens did not comply with the notice requirements in the abandoned mineral statutes.

### B

[¶ 14] The Capps argue in the alternative that the notice provisions of the abandoned minerals statutes violate due process and are unconstitutional as applied in this case. Early in these proceedings, before the district court vacated its prior order on reconsideration, *see Capps*, 2013 ND 16, ¶ 4, 826 N.W.2d 605, the court ruled these provisions pass constitutional muster.

[¶ 15] In *Simons v. State*, 2011 ND 190, ¶ 23, 803 N.W.2d 587, we explained:

The determination whether a statute is unconstitutional is a question of law, which is fully reviewable on appeal. *State v. Holbach*, 2009 ND 37, ¶ 23, 763 N.W.2d 761; *Teigen v. State*, 2008 ND 88, ¶ 7, 749 N.W.2d 505. All regularly enacted statutes carry a strong presumption of constitutionality, which is conclusive unless the party challenging the statute clearly demonstrates that it contravenes the state or federal constitution. *Teigen*, at ¶ 7; *Grand Forks Prof'l Baseball, Inc. v. North Dakota Workers Comp. Bureau*, 2002 ND 204, ¶ 17, 654 N.W.2d 426. Any doubt about a statute's constitutionality must, when possible, be resolved in favor of its validity. *State v. M.B.*, 2010 ND 57, ¶ 4, 780 N.W.2d 663; *Hoffner v. Johnson*, 2003 ND 79, ¶ 8, 660 N.W.2d 909. The power to declare a legislative act unconstitutional is one of the highest functions of the courts, and that power must be exercised with great restraint. *Teigen*, at ¶ 7; *MCI Telecomm. Corp. v. Heitkamp*, 523 N.W.2d 548, 552 (N.D.1994). The presumption of constitutionality is so strong that a statute will not be declared unconstitutional unless its invalidity is, in the court's judgment, beyond a reasonable doubt. *In re Craig*, 545 N.W.2d 764, 766 (N.D.1996); *MCI*, at 552. The party challenging the constitutionality of a statute has the burden of proving its constitutional infirmity. *State v. Brown*, 2009 ND 150, ¶ 30, 771 N.W.2d 267; *City of Fargo v. Salsman*, 2009 ND 15, ¶ 23, 760 N.W.2d 123.

[¶ 16] The Capps rely upon *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950), in which the United States Supreme Court stated, "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is

notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane* involved an action for judicial settlement of accounts which would be binding on anyone having an interest in a common fund. *Id.* at 310–11, 70 S.Ct. 652. The only notice given of the proceeding was by newspaper publication authorized by statute. *Id.* at 310, 70 S.Ct. 652. The Court held that "[t]he statutory notice to known beneficiaries is inadequate, not because in fact it fails to reach everyone, but because under the circumstances it is not reasonably calculated to reach those who could easily be informed by other means at hand," most notably by mail. *Id.* at 319, 70 S.Ct. 652. The Capps argue that in this case "notice was not reasonably calculated to reach anyone because Nelson was deceased and those mailing the notice believed she was deceased."

[¶ 17] The Weflens and the district court relied upon *Texaco, Inc. v. Short,* 454 U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982), which held constitutional the Indiana Dormant Mineral Interests Act. The Indiana Act is "similar" to N.D.C.C. ch. 38–18.1. *Svenberg,* 1999 ND 113, ¶ 21 n. 2, 595 N.W.2d 323. The Indiana Act provided that a severed mineral interest that is not used for a period of 20 years automatically lapses and reverts to the current surface owner of the property unless the mineral owner files a statement of claim in the local county recorder's office. *Short,* at 518, 102 S.Ct. 781. The Act did not require that any specific notice be given to a mineral owner prior to a statutory lapse of a mineral estate, but did set forth a procedure by which a surface owner who had succeeded to the ownership of a mineral estate under the statute "may" give notice that the mineral interest had lapsed. *Id.* at 520, 102 S.Ct. 781. It behooved a surface owner to provide notice by publica-

tion that the interest had lapsed because, if the surface owner did not, the mineral interest owner had 60 days after receiving actual knowledge to file a statement of claim. *Id.* at 520 n. 8, 102 S.Ct. 781. In each of the consolidated cases considered in *Short,* the surface owner gave notice by publication and mail. *Id.* at 521–22, 102 S.Ct. 781.

[¶ 18] After concluding the "State surely has the power to condition the ownership of property on compliance with conditions that impose such a slight burden on the owner while providing such clear benefits to the State," *Short,* 454 U.S. at 529–30, 102 S.Ct. 781 (footnote omitted), the Court addressed the due process question whether "appellants had a constitutional right to be advised—presumably by the surface owner—that their 20–year period of nonuse was about to expire." *Id.* at 533, 102 S.Ct. 781. The Court explained:

In answering this question, it is essential to recognize the difference between the self-executing feature of the statute and a subsequent judicial determination that a particular lapse did in fact occur. As noted by appellants, no specific notice need be given of an impending lapse. If there has been a statutory use of the interest during the preceding 20–year period, however, by definition there is no lapse—whether or not the surface owner, or any other party, is aware of that use. Thus, no mineral estate that has been protected by any of the means set forth in the statute may be lost through lack of notice. It is undisputed that, before judgment could be entered in a quiet title action that would determine conclusively that a mineral interest has reverted to the surface owner, the full procedural protections of the Due Process Clause—including notice reasonably calculated to reach all interested

parties and a prior opportunity to be heard—must be provided.

*Id.* at 533–34, 102 S.Ct. 781.

[¶ 19] In upholding the constitutionality of the Act, the Court distinguished *Mullane,* 339 U.S. 306, 70 S.Ct. 652:

> The reasoning in *Mullane* is applicable to a judicial proceeding brought to determine whether a lapse of a mineral estate did or did not occur, but not to the self-executing feature of the Mineral Lapse Act. The due process standards of *Mullane* apply to an "adjudication" that is "to be accorded finality." . . .
>
> As emphasized above, appellants do not challenge the sufficiency of the notice that must be given prior to an adjudication purporting to determine that a mineral interest has not been used for 20 years. Appellants simply claim that the absence of specific notice prior to the lapse of a mineral right renders ineffective the self-executing feature of the Indiana statute. That claim has no greater force than a claim that a self-executing statute of limitations is unconstitutional. The Due Process Clause does not require a defendant to notify a potential plaintiff that a statute of limitations is about to run, although it certainly would preclude him from obtaining a declaratory judgment that his adversary's claim is barred without giving notice of that proceeding.

*Short,* 454 U.S. at 535–36, 102 S.Ct. 781.

[¶ 20] The Capps' attempts to distinguish *Short* are unavailing. The Capps argue that "[i]n North Dakota, the severed mineral interest never lapses without publication and notice to the [mineral] owner and filing with the County Recorder." Section 38–18.1–06(1) requires "notice of the lapse" after it has already occurred to allow the mineral interest owner 60 days to reclaim the mineral interest under N.D.C.C. § 38–18.1–05(3). The Indiana statutory scheme analyzed in *Short* contained a similar feature, only the giving of notice was discretionary with the surface owner. *See* 454 U.S. at 520 n. 8, 102 S.Ct. 781. The Capps argue *Short* is distinguishable because North Dakota requires notice of lapse but the Indiana law did not. The Capps have not explained how a statutory scheme requiring notice that a mineral interest has lapsed is unconstitutional while a statutory scheme allowing discretionary notice is constitutional.

[¶ 21] The Capps argue North Dakota's statutory scheme is not self-executing, but we have observed "[t]he statutory procedure is wholly self-executing." *Peterson,* 2014 ND 40, ¶ 12, 842 N.W.2d 920. The Capps rely on *Tulsa Prof'l Collection Servs., Inc. v. Pope,* 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988), in which the Supreme Court invalidated on due process grounds Oklahoma's use of publication only to notify creditors of estates of the time to file their claims under the state's nonclaim statute. However, the *Pope* Court explained:

> As we noted in *Short,* however, it is the "self-executing feature" of a statute of limitations that makes *Mullane . . .* inapposite. See 454 U.S. at 533, 536, 102 S.Ct. 781. The State's interest in a self-executing statute of limitations is in providing repose for potential defendants and in avoiding stale claims. The State has no role to play beyond enactment of the limitations period. While this enactment obviously is state action, the State's limited involvement in the running of the time period generally falls short of constituting the type of state action required to implicate the protections of the Due Process Clause.
>
> Here, in contrast, there is significant state action. The probate court is intimately involved throughout, and without that involvement the time bar is never

activated. The nonclaim statute becomes operative only after probate proceedings have been commenced in state court.

*Id.* at 486–87, 108 S.Ct. 1340.

[¶ 22] The abandoned mineral statutes do not require any judicial action before a mineral interest is deemed to have lapsed. Compliance with the statutory procedure is all that is required. *See Peterson,* 2014 ND 40, ¶ 12, 842 N.W.2d 920 ("once the notice procedure under the statute is completed, title to the mineral interest vests in the surface owner as of the date of abandonment, without the necessity of a subsequent quiet title action."). Although the Capps argue there is "state action" because the county recorder files the necessary documents under the abandoned mineral statutes, recording documents is a ministerial action on the part of a county recorder. *See Loran v. Iszler,* 373 N.W.2d 870, 874 (N.D.1985). A county recorder makes no judicial adjudication in filing documents. If the filing of documents with a county recorder constituted "significant state action," the Indiana statutory scheme would not have survived the constitutional challenge waged in *Short.*

[¶ 23] We conclude the Capps have failed to establish that the notice provisions of N.D.C.C. ch. 38–18.1 are unconstitutional on their face or as applied in this case.

### III

[¶ 24] It is unnecessary to address the controversy between the Capps and the Hassans over the interpretation of the 1979 deed. Those mineral interests were abandoned and vested in the Weflens. We reverse and remand for entry of judgment quieting title to the subject mineral interests in the Weflens.

[¶ 25] BENNY A. GRAFF, S.J., GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, and LISA FAIR McEVERS, JJ., concur.

[¶ 26] The Honorable BENNY A. GRAFF, S.J., sitting in place of KAPSNER, J., disqualified.