2015 ND 150

**The PIFER GROUP, INC., Plaintiff, Appellant, and Cross–Appellee**

v.

**Judith M. LIEBELT, Sandra K. Janke, Dennis M. Janke, Defendants, Appellees, and Cross–Appellants.**

No. 20140442.

Supreme Court of North Dakota.

June 11, 2015.

Roger J. Minch, Fargo, N.D., for plaintiff, appellant, and cross-appellee.

David A. Garaas, Fargo, N.D., for defendants, appellees, and cross-appellants.

CROTHERS, Justice.

[¶ 1] The Pifer Group, Inc., appeals, and Judith Liebelt and Sandra and Dennis Janke cross-appeal, from a judgment awarding Pifer Group $8,215.81 for breach of two land auction sale agreements. We affirm, concluding the auction sale agreements are enforceable and the district court did not err in its interpretation of them.

I

[¶ 2] In 2013, Liebelt and the Jankes entered into separate land auction sale agreements with Pifer Group to auction their Cass County farmland. The agreements provided in relevant part:

> "No property shall be sold or withdrawn from the sale prior to the auction except by mutual agreement between OWNER and AUCTIONEERS. If any property is sold or withdrawn prior to the completion of the sale, AUCTIONEER and Clerk shall be paid based on the percent times the fair market value of property withdrawn.... In the event of cancellation for any reason, Auctioneers shall be paid a fee of $2,500.00 plus 100% of all expenses incurred up to the date of cancellation...."

Each agreement also contained the following handwritten provision: "Seller reserves the right to reject any and all bids—If bids are rejected auction company has not earned said commission."

[¶ 3] On the morning of the scheduled auction, Liebelt and the Jankes sent Pifer Group an email stating: "We are withdrawing from today's 11am land auction and will refuse any and all bids pursuant to our contract agreement." No auction sale was held.

[¶ 4] Pifer Group sued Liebelt and the Jankes for breach of the auction sale agreements and sought damages based on full sales commissions that would have been owed if the sales occurred. Construing the auction sale agreements, the district court on summary judgment awarded Pifer Group only cancellation fees of $8,215.81 and rejected the arguments of Liebelt and the Jankes that the agreements were void as a matter of law.

II

[¶ 5] Our standard for reviewing summary judgments is well-established:

"Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record."

*Deckert v. McCormick*, 2014 ND 231, ¶ 9, 857 N.W.2d 355 (quoting *Capps v. Weflen*, 2014 ND 201, ¶ 7, 855 N.W.2d 637).

### III

[¶ 6] In their cross-appeal, Liebelt and the Jankes argue the district court erred in awarding Pifer Group damages because the land auction sale agreements are void and unenforceable.

### A

[¶ 7] Liebelt and the Jankes argue the land auction sale agreements are void and unenforceable because it is undisputed that Pifer Group, a corporation, is not a licensed auctioneer. They contend because auctioneering without a license is a class B misdemeanor, *see* N.D.C.C.

§§ 51–05.1–01 and 51–05.1–07, the agreements are illegal and void under N.D.C.C. § 9–08–01 and cannot be enforced. The district court rejected this argument, concluding

"North Dakota law only allows living persons to obtain [an auctioneer] license." *See* § 51–05.1–02. Here, it is undisputed that Kevin D. Pifer, a principle owner of Pifer, is a North Dakota licensed auctioneer. The Court, therefore, concludes that Pifer, a corporation, is not required to hold an auctioneer's license, and thus is not barred for that reason from enforcing the contracts."

[¶ 8] Questions of statutory construction are fully reviewable on appeal. *See Haugland v. City of Bismarck*, 2012 ND 123, ¶ 47, 818 N.W.2d 660. In interpreting statutes, we first look at the language and give words their plain, ordinary and commonly understood meaning, "unless a contrary intention plainly appears, but any words explained in this code are to be understood as thus explained." N.D.C.C. § 1–02–02. We construe statutes as a whole and harmonize them to give meaning to related provisions, and interpret them in context to give meaning and effect to each word, phrase, and sentence. *See State v. Brossart*, 2015 ND 1, ¶ 23, 858 N.W.2d 275.

[¶ 9] Section 51–05.1–04(1), N.D.C.C., defines an "auctioneer" as "a person who, for a compensation or valuable consideration, sells or offers for sale either real or personal property at public auction as a whole or partial vocation." Section 51–05.1–04(2), N.D.C.C., defines a "clerk" as "any person, firm, partnership, copartnership, association, corporation, or limited liability company who, for a compensation or valuable consideration, is employed either directly or indirectly by an owner while the sale is in progress to [listing of

duties]." The Attorney General, noting the difference in the definitions between an "auctioneer" and a "clerk," has opined the Legislature intended that only individuals fall within the definition of an "auctioneer":

> "Chapter 51–05.1, N.D.C.C., does not define 'person.' Section 1-01–49(8), N.D.C.C., contains a definition of 'person' that is to be used unless the context requires otherwise. Under that definition, 'person' includes an 'organization.' An 'organization' includes 'a foreign or domestic association, business trust, corporation, enterprise, estate, joint venture, limited liability company, limited liability partnership, limited partnership, partnership, trust, or any legal or commercial entity.' "
>
> "The context in which 'person' is used in N.D.C.C. ch. 51–05.1, however, indicates that the Legislative Assembly intended a different meaning. The definition of 'auctioneer' uses the single term 'person,' [N.D.C.C. § 51–05.1–04(1),] while the definition of 'clerk' in the same section expands the list of eligible entities beyond 'person' to include 'any person, firm, partnership, copartnership, association, corporation, or limited liability company.' [N.D.C.C. § 51–05.1–04(2).] The inclusion of other non-individual entities to the definition of 'clerk' while excluding them from the definition of 'auctioneer' indicates the Legislative Assembly did not intend those additional entities that are not individuals to come within the definition of 'auctioneer.' "

N.D. Att'y Gen. 2005–L–40, p. 2 (Nov. 4, 2005) (footnotes omitted). The Attorney General's opinion is bolstered by administrative regulations governing auction schools and auctioneer license applicants who have been convicted of crimes, which clearly speak in terms of individuals rather than corporate entities. *See* N.D. Admin. Code §§ 69–08–01–01 and 69–08–01–02. We think the Attorney General's statutory interpretation is persuasive. *See State v. Leppert*, 2014 ND 207, ¶ 4, 855 N.W.2d 665.

[¶ 10] Liebelt and the Jankes rely on *Preference Pers., Inc. v. Peterson*, 2006 ND 35, 710 N.W.2d 383, and cases from other jurisdictions for the proposition that unlicensed corporations cannot enforce contracts. In *Peterson*, we held that an unlicensed employment agency, which was required to be licensed under the law, could not maintain an action for breach of an employment agreement. *Id.* at ¶¶ 4, 10. The auction cases from other jurisdictions are to the same effect. But those cases are inapposite because no statute requires that Pifer Group be licensed as an auctioneer. Here, Pifer Group's principle owner, Kevin Pifer, was a licensed auctioneer. He would have conducted the auction and his name and auctioneer license number appeared on both land auction sale agreements.

[¶ 11] We reject the argument that the agreements are void and unenforceable because Pifer Group was not licensed as an auctioneer.

B

[¶ 12] Liebelt argues her land auction sale agreement is void because, "[i]f the real estate is a homestead, the auctioneer's authority must be signed and acknowledged by both the husband and wife" under the homestead laws, and Liebelt's husband failed to sign the auction sale agreement. Assuming Liebelt may raise the homestead rights of her husband, who is not a party in this proceeding, we reject the argument.

[¶ 13] First, in *Bismarck Realty Co. v. Folden*, 354 N.W.2d 636, 640 (N.D.1984), this Court held a real estate listing agreement or an authorization to sell agreement

is an employment contract or the creation of an agency relationship, and is not a contract for the sale of real property within the meaning of the statute of frauds, N.D.C.C. § 9–06–04. A land auction sale agreement is not substantively different from a listing agreement or authorization to sell agreement, and we likewise conclude it is not a contract for the sale of real property. Second, Liebelt relies on N.D.C.C. § 47–18–05, which provides: "The homestead of a married person, without regard to the value thereof, cannot be conveyed or encumbered unless the instrument by which it is conveyed or encumbered is executed and acknowledged by both the husband and wife." This statute is inapplicable because no sale of property occurred and no homestead rights have been "conveyed or encumbered."

[¶ 14] We conclude the land auction sale agreements are not void and unenforceable.

## IV

[¶ 15] Pifer Group argues the district court erred in awarding cancellation damages because it is entitled to full sales commissions under the terms of the land auction sale agreements.

[¶ 16] In *Northstar Founders, LLC v. Hayden Capital USA, LLC,* 2014 ND 200, ¶ 45, 855 N.W.2d 614, we explained:

"The construction of a written contract to determine its legal effect is a question of law, which is fully reviewable on appeal. *Brash v. Gulleson,* 2013 ND 156, ¶ 15, 835 N.W.2d 798. " "[O]n appeal, we independently examine and construe the contract to determine if the trial court erred in its contract interpretation." " *Id.* (quoting *Bakken v. Duchscher,* 2013 ND 33, ¶ 13, 827 N.W.2d 17). We construe contracts to give effect to the parties' mutual intent at the time the contract was formed.

N.D.C.C. § 9–07–03; . . . When possible, we look at the language of the contract alone to determine the parties' intent. N.D.C.C. § 9–07–04; . . . We give words their plain, ordinary, and commonly understood meaning, unless contrary intention plainly appears. N.D.C.C. § 9–07–09; . . . We read the contract as a whole and give effect to each provision. N.D.C.C. § 9–07–06; . . ."

[¶ 17] The parties do not argue that the provisions of the land auction sale agreements are ambiguous in any respect. They both maintain only a legal question on the interpretation of the agreements is involved in this case. Pifer Group argues the district court erred in ruling there was a "cancellation" of the auction because Pifer Group "cancelled nothing." Pifer Group argues Liebelt's and the Jankes' email stating they were "withdrawing" from the auction and "will refuse any and all bids pursuant to our contract agreement" can only bring into play the provisions requiring "mutual agreement" for "withdraw[ing]" property from the sale prior to the auction and requiring payment based on "the percent times the fair market value of property withdrawn."

[¶ 18] Pifer Group's construction of the land auction sale agreements ignores the handwritten provision that "Seller reserves the right to reject any and all bids—If bids are rejected auction company has not earned said commission." We must give effect to each provision of a contract if possible, *see* N.D.C.C. § 9–07–06, and in a conflict between written and printed parts of a contract, the written part controls. *See* N.D.C.C. § 9–07–16. The handwritten provision of the agreements, agreed to by Pifer Group, gave Liebelt and the Jankes the right to reject any and all bids without paying Pifer Group any commissions. Although Pifer Group argues bids only can

be rejected if made during the sale itself, "[i]f a party can withdraw from selling his property during an absolute auction, he can certainly withdraw or dispose of his property prior to the beginning of the auction." *Greer v. Arnold,* 633 S.W.2d 75, 77 (Ky.Ct.App.1982); *see also Crown Am. Corp. v. Oliver Smith Realty & Auction Co., Inc.,* 1995 WL 140830, \*4, 51 F.3d 271 (6th Cir. March 29, 1995) (unpublished decision) ("It would be incongruous to conclude that Crown could reject every bid at the auction, thereby precluding any commission, yet be forced to pay a full commission if it 'withdrew' the property before auction.").

[¶ 19]　We agree with the district court that Pifer Group's implied argument only Pifer Group could "cancel" the auction is unreasonable.　The land auction sale agreements do not limit the right of cancellation to Pifer Group.　We also reject the argument of Liebelt and the Jankes that the handwritten provision of the agreements absolves them of any liability for damages, because this argument ignores the cancellation provision.　As the court explained:

> "When the Defendants Liebelt and Janke informed Pifer that they were withdrawing from the auction and would refuse all bids, they 'cancelled' the auction. 'Cancellation' is not defined in the contract, but words of a contract are understood in their ordinary and popular sense. *Fargo Foods, Inc. v. Bernabucci,* 1999 ND 120, ¶ 13, 596 N.W.2d 38. Furthermore, 'ordinary meaning' of a contract term is a definition which a person not trained in the law would attach. *Martin v. Allianz Life Ins. Co. of North America,* 1998 ND 8, ¶ 12, 573 N.W.2d 823. The word 'cancellation,' in its ordinary sense, is defined as 'the calling off of an arrangement.' Webster's Third New Dictionary 325 (1993).

> "Here, it is undisputed by their withdrawal from the auction, Defendants Liebelt and Janke called off the auction, and thus, cancelled it under the terms of the contract.

> "Therefore, Plaintiff's remedy for Defendants' cancellation of the contract are ['$2,500.00 plus 100% of all expenses incurred up to the date of cancellation']."

[¶ 20]　We conclude the district court did not err in construing the land auction sale agreements and in awarding Pifer Group $8,215.81 in damages.

V

[¶ 21]　It is unnecessary to address other arguments raised because they either are unnecessary to the decision or are without merit.　The judgment is affirmed.

[¶ 22]　GERALD W. VANDE WALLE, C.J., LISA FAIR McEVERS, CAROL RONNING KAPSNER and DALE V. SANDSTROM, JJ., concur.