2015 ND 209

**Ronald OLSON, Jennifer Olson, Personal Representative of the Estate of**

Robert Olson, and Marlys Kjellberg, Plaintiffs.

Ronald Olson and Marlys Kjellberg, Appellants

v.

Alerus Financial Corporation, Alerus Financial, National Association, Jayson Menke, Defendants and Appellees.

No. 20150009.

Supreme Court of North Dakota.

Aug. 25, 2015.

DeWayne A. Johnston, Grand Forks, ND, for appellants.

Scott J. Landa, Grand Forks, ND, for defendant and appellee Alerus Financial Corporation, Alerus Financial, National Association.

Michael J. Morley, Grand Forks, ND, for defendant and appellee Jayson Menke.

CROTHERS, Justice.

[¶ 1] Ronald Olson and Marlys Kjellberg appeal from a summary judgment dismissing their action for damages against Alerus Financial Corporation, Alerus Financial, National Association ("Alerus Entities") and Jayson Menke and from an order denying leave to amend their complaint. We reverse the district court's order denying leave to amend the complaint and remand for further proceedings. We reverse the district court's order granting summary judgment dismissing the Olsons' claims against Menke for breach of fiduciary duty. We affirm the district court's order for summary judgment dismissing the Olsons' claims seeking to impose respondeat superior liability on the Alerus entities and to pierce the Alerus entities' corporate veil.

I

[¶ 2] Robert Olson, Ronald Olson and Marlys Kjellberg ("Olsons") are siblings who owned farm real estate in Grand Forks County, North Dakota. Jayson Menke was a real estate agent with Botsford & Qualey Land Company of Grand Forks. On June 9, 2011, the Olsons signed a real estate listing agreement with Botsford Qualey and Menke that provided Botsford Qualey with the exclusive right to sell 200 acres of the Olsons' farmland. The listing agreement stated, "Seller is solely responsible for determining the appropriate listing price and has elected to offer the property by Conventional Sale."

[¶ 3] Menke provided the Olsons an analysis of their farmland, estimating the fair market value at $1,500 per acre. The Olsons increased the listing price to $1,700 per acre. The listing agreement shows an initially proposed sale price of $225,000, which the Olsons increased when they crossed out that amount and inserted

$340,000 as the selling price (200 acres × $1,700 per acre).

[¶ 4] The Olsons' long-time tenant was contacted to determine whether he was interested in buying the land. On June 30, 2011, the tenant made a written offer to buy the land at the full asking price of $1,700 per acre. On July 5 and 6, 2011, the Olsons accepted the tenant's offer and signed an agreement to sell their land to the tenant.

[¶ 5] The Olsons and Menke subsequently learned the tenant was attempting to resell the farmland at a higher price than he agreed to pay the Olsons. On August 30, 2011, the tenant closed on his purchase from the Olsons. That same day, the tenant closed on the sale of the same farmland to a nearby farmer for $500 more per acre than he paid the Olsons. On December 15, 2011, Alerus Financial, N.A. acquired the stock of Botsford Qualey and Botsford Qualey filed notice of intent to dissolve, thereby commencing the period under N.D.C.C. 10–19.1–110.1 for Botsford Qualey creditors to assert claims.

[¶ 6] By a complaint dated April 18, 2013, the Olsons sued "Alerus Financial Corporation (former parent company of Botsford & Qualey Land Company)." Alerus Financial Corporation answered on July 26, 2013. At about the same time, Botsford Qualey and Menke served a joint answer to the complaint even though they were not listed as defendants or served with the summons. On January 20, 2014, the Olsons moved to amend the complaint to add Alerus Financial, N.A., Menke and Botsford Qualey as defendants. On April 4, 2014, the district court granted the Olsons leave to add Alerus Financial, N.A. and Menke as defendants but did not allow the Olsons to add Botsford Qualey. The Olsons served a first amended complaint on May 7, 2014. The Alerus entities answered on May 27, 2014. Menke answered on May 28, 2014.

[¶ 7] All parties subsequently filed summary judgment motions. The district court granted summary judgment in favor of all defendants on November 5, 2014. Judgment was entered on November 10, 2014. The Olsons timely appealed.

II

[¶ 8] The Olsons argue the district court erred in refusing to grant leave to amend the complaint to add Botsford Qualey as a defendant and for those claims to relate back to the original complaint. We agree.

[¶ 9] We review an appeal from an order denying amendment of a pleading under the abuse of discretion standard. *Johnson v. Hovland*, 2011 ND 64, ¶ 8, 795 N.W.2d 294.

> "A district court abuses its discretion when it acts arbitrarily, unconscionably, or unreasonably, or when its decision is not the product of a rational mental process leading to a reasoned determination. When a proposed amendment would be futile, the district court does not abuse its discretion in denying a motion to amend the complaint."

*Id.* (citations omitted).

[¶ 10] Alerus Financial argues the amendment would be futile because claims against Botsford Qualey cannot properly relate back to the original complaint. Relation back is important because, under N.D.C.C. 10–19.1–110.1(2)(a), the action needed to be brought by December 15, 2013, which was two years after Botsford Qualey filed its notice of dissolution. The Olsons brought the action on April 18, 2013, and moved to amend the complaint on January 20, 2014.

[¶ 11] Rule 15(c), N.D.R.Civ.P., provides:

"(c) Relation Back of Amendments.

(1) When an Amendment May Relate Back. An amendment to a pleading relates back to the date of the original pleading when:

(A) the law that provides the applicable statute of limitations allows relation back;

(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or

(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by law for commencing the action against the party to be brought in by the amendment, the party:

(i) received such notice of the action that it will not be prejudiced in defending on the merits; and

(ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."

The district court found the factors in N.D.R.Civ.P. 15(c)(1)(B) and (C)(i) were satisfied. The district court found the final factor in Rule 15(c)(ii) was not satisfied and explained:

"Olson/Kjellberg fail to satisfy the third requirement. Although the additional Defendants knew or should have known that the action would have been brought against them, the undersigned finds that Olson/Kjellberg knew within the limitation period of any mistake concerning the identity of the 'proper parties' and failed to amend their Complaint.

. . . .

"The central issue in the pending motion is whether or not Olson/Kjellberg can satisfy the 'mistake-of-identity' requirement. The North Dakota Supreme Court has rejected the proposition that a mistake concerning the identity of a proper party would include a mistake in assessing the liability of known parties. *Wayne–Juntunen Fertilizer Co. [v. Lassonde]*, 474 N.W.2d [254], 256 [(N.D. 1991)]. To satisfy the requirements of N.D.R.Civ.P. 'a party must demonstrate some confusion about the identity of a proper potential party, not confusion over that party's liability.' *Id.* at 256–57.

"With respect to Botsford Qualey and Menke, there is little doubt that Olson/Kjellberg were aware of their identity and their potential to be parties. The Complaint itself asserts all of its claims directly against Botsford Qualey and Menke, incorporating Alerus Financial only with respect to the doctrine of respondeat superior in paragraph 2 of the Complaint. On November 15, 2013[,] a letter sent by counsel for Olson/Kjellberg included the following:

1. Your clients, Botsford & Qualey and Jayson Menke, are not currently defendants in this lawsuit;

2. Plaintiffs are willing to share this discovery with you as they anticipate adding your clients to this lawsuit shortly as proper parties; and

3. To that end [adding Botsford Qualey and Menke as parties] would you stipulate to being joined as accepting service in this matter?

"Olson/Kjellberg were aware that Botsford Qualey and Menke were proper parties to the litigation prior to December 15, 2013. With respect to the amended claims against Botsford Qualey and Menke, the proposed amendments do not satisfy the requirements of

N.D.R.Civ.P. 15(c)(1)(C) for relation back to the original Complaint."

[¶ 12] Rule 15(c)(1)(C)(ii), N.D.R.Civ. P., requires a finding on whether the party opposing amendment "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." The Rule unmistakenly focuses on knowledge of Botsford Qualey as the nonmoving party. The United States Supreme Court has interpreted the federal counterpart's same language to also focus on the prospective defendant's knowledge, not the plaintiff's knowledge, and "[i]nformation in the plaintiff's possession is relevant only if it bears on the defendant's understanding of whether the plaintiff made a mistake regarding the proper party's identity." *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 548, 130 S.Ct. 2485, 177 L.Ed.2d 48 (2010).

[¶ 13] Here, at the urging of Alerus, Menke and Botsford Qualey, the district court incorrectly focused on the Olsons rather than Botsford Qualey. Proper focus requires inquiry into whether the nonmoving party "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." N.D.R.Civ.P. 15(c)(1)(C)(ii).

[¶ 14] Because the district court misapplied the law, we reverse and remand for consideration of the facts under a correct application of Rule 15(c)(1)(C)(ii). On remand, the district court is not required to disregard the Olsons' knowledge and action or inaction regarding Botsford Qualey. However, rather than being pertinent to the relation back question, the Olsons' litigation conduct is addressed to the district court's discretion in permitting leave to amend in the first instance. *See* N.D.R.Civ.P. 15(a); 6A Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 1498.3 (2010) ("Although [plaintiff's inexcusable neglect] is germane to the question of permitting an amendment, it is more closely related to the trial court's exercise of discretion under Rule 15(a) whether to allow the change than it is to the satisfaction of the notice requirements of Rule 15(c)." (footnote omitted)).

## III

[¶ 15] The Olsons assert claims against Alerus Financial Corporation and Alerus Financial, N.A. for respondeat superior liability and piercing the corporate veil. They alleged against Menke only tort-based claims that he breached his fiduciary duty to the Olsons and was negligent regarding the sale of the Olsons' farmland.

[¶ 16] Menke moved for summary judgment dismissing the Olsons' claims, arguing the listing agreement was a fully integrated contract between Botsford Qualey–Menke and the Olsons which controlled the relationship. Menke further argued he owed no fiduciary duty, he fully complied with all duties under the listing agreement, and the Olsons were exclusively responsible under the listing agreement for setting the sale price of their land and the method of sale.

[¶ 17] The Olsons did not dispute Menke fulfilled his obligations under the listing agreement and agree their amended complaint does not assert Botsford Qualey or Menke breached the contract. The Olsons instead claim that Botsford Qualey and Menke owed duties outside the contract and that material issues of fact remain, making summary judgment in favor of Menke improper.

[¶ 18] The Alerus entities also filed motions for summary judgment seeking dismissal of the Olsons' claims. The Olsons resisted the summary judgment motions

and themselves moved for summary judgment. After a hearing, the district court granted Menke's and the Alerus entities' motions for summary judgment and denied the Olsons' summary judgment motion.

[¶ 19] Our standard of review on summary judgment is well-settled:

"Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record."

*Anderson v. Zimbelman,* 2014 ND 34, ¶ 7, 842 N.W.2d 852 (citation omitted) (quotation marks omitted).

### A

■ [¶ 20] The Olsons argue the district court erred by granting summary judgment against them on their breach of fiduciary duty claim against Menke. Menke argues the contractual relationship between the parties and the economic loss rule limit the Olsons' claims to breach of contract. *See Leno v. K & L Homes, Inc.,* 2011 ND 171, ¶ 17, 803 N.W.2d 543. Because of N.D.C.C. 43–23–12.1, we agree with the Olsons and disagree with Menke that the economic loss rule applies.

[¶ 21] The district court ruled the Olsons' claims were precluded as a matter of law because the transaction was governed by the listing agreement in which the Olsons acknowledged they were responsible for determining the listing price and they elected to sell the property by conventional sale. The court concluded the listing agreement was unambiguous, parol evidence precluded the introduction of extrinsic evidence, no fraud, accident, misrepresentation or mistake in the inducement of the Olsons to execute the listing agreement exists and, therefore, the listing agreement precludes recovery.

■ [¶ 22] A claim for breach of fiduciary duty is a tort claim. *See Meyer v. Maus,* 2001 ND 87, ¶ 14, 626 N.W.2d 281; *Danuser v. IDA Marketing Corp.,* 2013 ND 196, ¶ 47, 838 N.W.2d 488 (Crothers, J., dissenting). In *Schlossman & Gunkelman, Inc. v. Tallman,* without discussing the basis for a claim, we held a real estate agent owes a fiduciary relationship to a client. 1999 ND 89, ¶¶ 30–33, 593 N.W.2d 374. The Olsons rely on *Schlossman & Gunkelman* and N.D.C.C. 43–23–12.1(1) to impose noncontractual duties on Menke.

[¶ 23] Section 43–23–12.1(1), N.D.C.C., provides, in part:

"A real estate brokerage firm and the real estate brokerage firm's licensees, which provide services through a written agency agreement for a client, are bound to that client by the duties of loyalty, obedience, disclosure, confidentiality, reasonable care, diligence, and accounting, subject to the provisions of this chapter and subject to any rules adopted under this chapter."

[¶ 24] A " 'Licensee' [is] a real estate broker, an associate real estate broker, or a real estate salesperson who is associated with a real estate brokerage firm." N.D.C.C. 43–23–06.1(7). A " 'Client' [is] a person that has entered a written agency agreement with a real estate brokerage firm." N.D.C.C. 43–23–06.1(2). In the Olsons' transaction, Menke was a real estate salesperson associated with Botsford Qualey, which made him a licensee. The Olsons had a written listing agreement with Botsford Qualey and Menke, making them a client. Therefore, under N.D.C.C. 43–23–12.1(1), Menke and Botsford Qualey were "bound to [the Olsons] by the duties of loyalty, obedience, disclosure, confidentiality, reasonable care, diligence, and accounting, subject to the provisions of this chapter and subject to any rules adopted under this chapter."

[¶ 25] Menke and the Alerus entities argue that any duties created by the statute are enforceable only by the North Dakota Real Estate Commission and no private right of action exists under N.D.C.C. ch. 43–23. To determine whether a private right of action exists under a statute, courts must determine:

"(1) whether the plaintiff is one of the class for whose special benefit the statute was enacted; (2) whether there is an indication of legislative intent, explicit or implicit, either to create such remedy or to deny one; and (3) whether it is consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff."

*Ernst v. Burdick*, 2004 ND 181, ¶ 11, 687 N.W.2d 473; *see also Trade 'N Post, LLC v. World Duty Free Americas, Inc.*, 2001 ND 116, ¶ 13, 628 N.W.2d 707.

[¶ 26] Chapter 43–23, N.D.C.C., when read as a whole demonstrates a legislative intent to create a private remedy to enforce violations of the statutes. That intent is apparent from imposition of duties on real estate brokerage firms and the firms' licensees. *See* N.D.C.C. 43–23–12.1(1). The next section expressly abrogates common law, providing:

"The duties of a real estate brokerage firm, and the firm's licensees, as specified in this chapter or in rules adopted to implement this chapter, supersede any fiduciary duties of that real estate brokerage firm and the firm's licensees, to a person based on common-law principles of agency to the extent that those common-law fiduciary duties are inconsistent with the duties specified in this chapter or in rules adopted to implement this chapter."

N.D.C.C. 43–23–12.2(1). Convincingly, the chapter also requires that real estate salespersons and brokers "carry errors and omissions insurance covering all activities contemplated under this chapter." N.D.C.C. 43–23–19. The legislative requirement that real estate salespersons and brokers be insured against breaches of fiduciary duty, among other claims, is strong evidence that the legislature intended a private right of action be available under N.D.C.C. ch. 43–23. From these considerations, we·conclude the three-part test is satisfied in favor of recognizing a private right of action for the Olsons.

[¶ 27] Section 43–23–12.1(1), N.D.C.C., imposed a fiduciary duty on Menke. That same section, together with the remaining portions of N.D.C.C. ch. 43–23 relating to abrogation of the common law and the need for errors and omissions insurance, created a private right of action, allowing a claim by the Olsons. In their opposition to summary judgment, the Olsons provided affidavits and citations to the record supporting allegations that Menke failed to adequately research and evaluate the fair market value of their land, he failed to disclose to the Olsons

information about other area farmland sales and he failed to adequately investigate other buyers' interest in their property. Under our standard of review, that evidence creates a genuine issue of fact whether Menke breached his duties created under N.D.C.C. 43–23–12.1(1) and we reverse summary judgment in Menke's favor. At the same time, we reject the Olsons' request that summary judgment be granted in their favor, and we remand for resolution of disputed facts.

## B

■ [¶ 28] The Olsons argue the district court erred by granting summary judgment dismissing their respondeat superior claims against the Alerus entities stemming from Menke's breach of fiduciary duty and negligence. We affirm.

[¶ 29] The Olsons asserted respondeat superior claims against Alerus Financial Corporation and Alerus Financial, N.A. The Olsons claimed Menke was an employee of either Alerus Financial Corporation or Alerus Financial, N.A. and that one or both of those entities are liable for Menke's conduct. The district court held that the Olsons failed to produce any evidence establishing Menke was an employee of Alerus Financial Corporation and that the Olsons failed to produce any evidence showing Menke was acting within the scope of his employment with Alerus Financial, N.A. relating to the conduct upon which the Olsons' claims are based. The Olsons do not appeal dismissal of their claim against Alerus Financial Corporation but challenge the granting of summary judgment for Alerus Financial, N.A.

[¶ 30] Section 3–03–09, N.D.C.C., codifies the doctrine of respondeat superior liability, providing that an employer can be vicariously liable for an employee's acts done on the employer's behalf and within the scope of the employee's employment.

*Nelson v. Gillette,* 1997 ND 205, ¶ 10, 571 N.W.2d 332; *Zimprich v. Broekel,* 519 N.W.2d 588, 590–91 (N.D.1994).

[¶ 31] To avoid summary judgment in favor of Alerus Financial, N.A. the Olsons were required to provide the district court with competent and admissible evidence establishing Menke was acting within the scope of his duties with Alerus Financial, N.A. when the alleged acts were performed. N.D.R.Civ.P. 56(b); *Nelson,* 1997 ND 205, ¶ 10, 571 N.W.2d 332; *Zimprich,* 519 N.W.2d at 590–91. Upon our review of the record, we agree with the district court that the Olsons failed to produce evidence establishing a material question of fact exists as to whether Menke was acting within his scope of his employment with Alerus Financial, N.A. at the time the alleged tortious acts were committed. The record shows Menke may have been an employee shared between Alerus Financial, N.A. and Botsford Qualey. But no evidence shows Menke was acting within the scope of his employment with Alerus Financial, N.A. at times relevant to his business with the Olsons. We therefore affirm the district court's dismissal of the Olsons' respondeat superior claim.

## C

■ [¶ 32] The Olsons argue the district court erred by granting summary judgment dismissing their claim "as to piercing the corporate veil as the relationship between Botsford and Alerus N.A. is unclear." We affirm.

[¶ 33] The Olsons claim their veil piercing claim against Alerus Financial, N.A. was improperly dismissed because the evidence shows Alerus Financial, N.A. owned Botsford Qualey during the Olson farmland sale and because Alerus Financial, N.A. and Botsford Qualey shared employees who used Alerus email addresses. The Olsons also argue veil piercing claims gen-

erally involve factual issues which are not suitable for summary judgment.

[¶ 34] The Olsons allege Alerus Financial, N.A. was the alter ego of Botsford Qualey. To avoid the corporate separateness of Botsford Qualey the Olsons were required to prove certain facts. This Court explained:

> "We have said generally that [a] corporation's officers and directors ... are not liable for the corporation's ordinary debts. But, the corporate veil may be pierced when the legal entity is used to defeat public convenience, justify wrong, protect fraud, or defend crime. We have discussed the following factors for the district court's consideration in deciding whether to pierce the corporate veil:
>
> > '[F]actors considered significant in determining whether or not to disregard the corporate entity include: insufficient capitalization for the purposes of the corporate undertaking, failure to observe corporate formalities, nonpayment of dividends, insolvency of the debtor corporation at the time of the transaction in question, siphoning of funds by the dominant shareholder, nonfunctioning of other officers and directors, absence of corporate records, and the existence of the corporation as merely a facade for individual dealings.'
>
> Before a court may properly pierce the corporate veil, an element of injustice, inequity or fundamental unfairness must also be present.
>
> "Additionally, North Dakota recognizes the 'alter ego' approach to piercing the corporate veil. We have said that [t]o apply the alter ego doctrine, there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist, and there must be an inequitable result if the acts in question are treated as those of the corporation alone. The burden of proving the requirements for piercing the corporate veil is on the party asserting the claim. In the context of a trial of contested facts, we have explained that [r]esolving the issue is heavily fact-specific and, therefore, is *within the sound discretion* of the district court."

*Solid Comfort, Inc. v. Hatchett Hospitality, Inc.*, 2013 ND 152, ¶ 17, 836 N.W.2d 415 (citations omitted) (quotation marks omitted).

[¶ 35] Here, the district court determined:

> "In response to the motion for summary judgment, the Olsons have not provided any evidence that either Alerus Financial Corporation and/or Alerus Financial, National Association owned Botsford Qualey during the timeframe of the transaction. Under these circumstances, the Olsons cannot support their claim to pierce the corporate veil because there is no unity of interest and ownership between Botsford Qualey and either of the Alerus entities."

[¶ 36] The Olsons argue evidence indicates that Alerus Financial, N.A. bought Botsford and Rice Management Company in 1998, that Alerus Financial, N.A. bought Braaten & Qualey Property Management Company in 1999, that Botsford and Rice and Braaten & Qualey were merged into Botsford Qualey and "Alerus N.A. has provided no evidence that Botsford was sold by Alerus N.A. prior to September 1, 2011." This argument mistakes a nonmoving party's obligations when faced with a summary judgment motion.

[¶ 37] "Summary judgment is appropriate against a party who fails to establish the existence of a factual dispute as to an

essential element of his claim and on which he will bear the burden of proof at trial." *Perius v. Nodak Mut. Ins. Co.*, 2010 ND 80, ¶ 9, 782 N.W.2d 355 (citation omitted) (quotation marks omitted).

"If the movant meets that initial burden, the opposing party may not simply rely upon the pleadings or upon unsupported conclusory allegations, but must present competent admissible evidence by affidavit or other comparable means which raises an issue of material fact and must, if appropriate, draw the court's attention to relevant evidence in the record by setting out the page and line in depositions or other comparable documents containing testimony or evidence raising an issue of material fact."

*Id.* (citation omitted) (quotation marks omitted).

[¶ 38] Here, the Olsons could not rely on the absence of evidence that Alerus Financial, N.A. sold Botsford Qualey. Rather, to avoid having summary judgment granted against them, they had to present admissible evidence on each element necessary to prove piercing the corporate veil was legally justified. That necessary evidence included proof of a unity of interests between Botsford Qualey and Alerus Financial, N.A. We agree with the district court's determination that the Olsons failed to provide evidence of unity of interests, which is necessary to pierce the Alerus entities' corporate veil. We affirm the district court's order for summary judgment and dismissing the claim seeking to pierce the Alerus entities' corporate veil.

## IV

[¶ 39] We reverse the district court's order denying leave to amend the complaint and remand for further proceedings. We reverse the district court's order granting summary judgment dismissing

the Olsons' claim against Menke for breach of fiduciary duty. We affirm the district court's order for summary judgment dismissing the Olsons' claims seeking to impose respondeat superior liability on the Alerus entities and to pierce their corporate veil.

[¶ 40] GERALD W. VANDE WALLE, C.J., LISA FAIR McEVERS, CAROL RONNING KAPSNER and DALE V. SANDSTROM, JJ., concur.